WONG WAI v. WILLIAMSON et al.

(Circuit Court, N. D. California. July 3, 1900.)

HEALTH—QUARANTINE REGULATIONS—VIOLATION OF INJUNCTION.

The court entered a decree enjoining the enforcement of a quarantine regulation prohibiting Chinese persons from leaving San Francisco without first submitting to inoculation, promulgated in part by defendant, as quarantine officer of the port, under Act March 27, 1890, authorizing the federal government to take measures to prevent the spread of contagious diseases from one state or territory to another; such injunction being based on the ground that the statute did not authorize the federal authorities to quarantine as between points within the same state, and on the further ground that the regulation was unconstitutional, as applying only to persons of a particular race, as a class. *Held*, that a subsequent enforcement of the regulation, modified to apply to all persons leaving for points without the state, who were required to procure a certificate from the quarantine officer, was not a violation of the injunction.

On Order to Show Cause for Contempt.

Reddy, Campbell & Metson, Maguire & Gallagher, Samuel M. Shortridge, John E. Bennett, and Robert Ferral, for complainant.

F. L. Coombs, U. S. Atty., for defendant J. J. Kinyoun.

Before MORROW, Circuit Judge, and DE HAVEN, District Judge.

MORROW, Circuit Judge (orally). On the 28th day of May, 1900, this court issued a writ of injunction in this cause, enjoining and restraining the defendants, comprising the board of health of the city and county of San Francisco, and J. J. Kinyoun, federal quarantine officer at this port, from inoculating the complainant and other Chinese residents of this city against their will; from imprisoning, restraining, or confining the complainant, or any of the Chinese resi-

dents of this city and county, within the limits thereof; and from otherwise interfering with or restraining the complainant, or any of said Chinese residents, in the exercise of their personal liberty to freely pass from said city and county of San Francisco to other parts of the state of California. On the 16th day of June, 1900, Wong Wai, the complainant, filed an affidavit stating that the defendant J. J. Kinyoun, in disregard and defiance of said order of injunction, and in contempt of this court, "prevented and prevents your affiant and others from passing beyond the territorial limits of said city and county of San Francisco, and restrains and confines your affiant and others within said city and, county, without any right whatever, and in disobedience of said order of injunction." It appears that on June 16, 1900, the complainant was desirous of taking passage on the steamer Orizaba for the port of Eureka, in this state, but was denied that privilege by the agents of the steamship company. Affidavits were introduced, of four Chinese persons other than the complainant, residents of the former quarantined district of San Francisco, to the effect that on the same day they were also desirous of departing to Eureka and to other places within the state of California, but were unable to obtain transportation without a certificate from the defendant Kinyoun that the holder had in all respects complied with the United States quarantine laws and regulations, and was, in the opinion of the quarantine officer, free from the infection of plague or the danger of conveying the same; that they presented themselves before said defendant Kinyoun, and said certificate was refused by him for the sole reason that the applicants were Chinese. It is also averred that the officers and agents of the steamship company, in refusing transportation to the affiants, acted under the direct orders of said Kinyoun, and not otherwise; and that said Kinyoun had stated to said officers and agents that, if any one were taken on board said steamship without said certificate, the said steamship would be quarantined at its place of destination. Accompanying this evidence is the affidavit of Milton Bernard, a clerk in the employ of a firm of attorneys representing the complainant herein, stating that he accompanied the several Chinese persons to the office of Dr. Kinyoun, and substantiating the statements contained in their affidavits. Dr. Kinyoun, in his return and reply affidavit, declares the statements of the complainant to be untrue; that, to the best of his knowledge, he did not see the complainant or the other Chinese on the 16th day of June, and did not issue orders or directions pertaining to them. He further states that, if the complainant or others had applied for certificates to leave San Francisco for Eureka or other parts of the state, he would have informed them that the transportation company was acting without authority from him in requiring such certificates, and that, on the contrary, his orders and directions to his assistants and subordinates were that certificates should not be required as a warrant for the traveling of any persons from San Francisco to any other part of this state. The return and affidavit are both under oath. Affidavits of the assistant surgeons in the United States marine hospital service detailed to

103 F.—25

assist Dr. Kinyoun also deny knowledge of the issuance of any orders by Dr. Kinyoun since May 28, 1900, requiring certificates of health to be obtained by persons desiring to travel between different parts of the state.

The opinion of the court in the injunction proceedings in this case held that the quarantine restrictions and regulations imposed by the defendants upon the complainant in traveling from San Francisco to other parts of the state were illegal and void, and, so far as the judgment and opinion of the court related to the defendant Dr. J. J. Kinyoun, and his conduct as involved in the present contempt proceedings, it declared the law to be: First, that, as quarantine officer in the marine hospital service of the United States at the port of San Francisco, he had no jurisdiction, under the act of March 27, 1890, to impose quarantine regulations or restrictions upon any class of persons traveling from place to place within the state; second, that any quarantine regulation or restriction imposed upon any particular class of persons, as Chinese or Japanese, and not imposed upon others similarly situated, was an arbitrary and unreasonable interference with, and discrimination against, the individual liberty of the persons regulated and restrained, contrary to the provisions of the fourteenth amendment to the constitution of the United States, and therefore void. It is charged that the defendant Dr. Kinyoun has violated the injunction in both of these particulars. Examining his acts in this connection, we find from the evidence produced upon the trial that on June 14th he telegraphed his superior officer at Washington, with regard to anticipated action of the court, as follows:

"Supervising Surgeon General, Washington, D. C.: If federal court orders abandonment cordon Chinese quarter, thereby permitting persons from infected district to depart from city, will, unless directed otherwise, enforce regula-. tions of May 21 against all persons leaving San Francisco for other states. Will instruct common carriers to refuse transportation all persons desiring to leave San Francisco to other states unless on certificate marine hospital officer. Will re-enforce guards state lines; also, notify state boards surrounding states actual conditions existing here. Kinyoun."

On the day following, the court having enjoined the quarantine regulations theretofore existing, Dr. Kinyoun issued the following orders to the transportation companies in this city:

"San Francisco Quarantine.

"San Francisco, Cal., June 15, 1900.

"In accordance with the law of March 27, 1890, and the regulations made thereunder, and promulgated by order of the president under date of May 21, 1900, you are hereby notified and directed, until further orders, not to issue transportation to any one leaving San Francisco for other states or territories of the United States unless on presentation of certificate signed by a marine hospital officer. Inspectors of the marine hospital service now stationed at the state borders have been instructed to allow no passengers coming from San Francisco to pass the borders of the state on any common carrier unless a certificate is furnished. This has been made necessary on account of the lifting of the quarantine by order of the federal court, thereby allowing people who have possibly been exposed to the infection of the plague to leave this city for other states.

"Respectfully,                                                    J. J. Kinyoun,

"Surgeon M. H. S., Quarantine Officer."

And on the same day he sent the following telegram to quarantine officers and boards of health at Eureka and San Diego, in California, and to the same officers in other states:

"Federal court dissolves quarantine imposed by local board of health on Chinese district on account of eleven deaths from plague occurring from March seventh until June second. Would suggest precautionary measures be instituted against all persons coming from the infected district. Have notified common carriers under law 1890 refuse transportation all persons leaving San Francisco for other states unless provided with certificate signed by marine hospital officer. Kinyoun."

The purpose of the injunction in this case was to relieve the complainant and those similarly situated from the restraint and imprisonment which was the subject of controversy in the case. That restraint and imprisonment was charged to be that the complainants were not permitted to depart from San Francisco for other places within this state, and were confined within the territorial limits of San Francisco unless they submitted to inoculation by Haffkine Prophylactic. It was determined that this restraint and imprisonment imposed upon the complainants by the defendants was, under the circumstances, illegal. The defendants, including the defendant Kinyoun, were accordingly directed by the injunction to desist from imposing the condition of inoculation upon complainants, and were required to permit them to freely pass from said city and county of San Francisco to other places in this state. In other words, the order of the court relieved the complainants from the restraint and imprisonment described in the bill of complaint, but it did not extend to or include a restraint or an actual or constructive imprisonment resulting from other conditions or growing out of other causes. Hence the orders and regulations issued by the defendant Kinyoun, directed to persons leaving San Francisco for other states and territories, did not come within the terms of the injunction. The original case did not involve that question, and it was not passed upon by the court. The only provision of these orders applicable to persons going from one part of the state to another is the suggestion contained in the telegram to the quarantine officers at Eureka, San Diego, and other places, wherein the defendant Kinyoun said, "Would suggest precautionary measures be instituted against all persons coming from the infected district." The infected district here referred to was the city of San Francisco, but the order itself had no relation to the departure of persons from San Francisco. At most, it was but a suggestion to an officer at another port to take precautionary measures against the introduction of infected persons into such places. What those measures were to be, does not appear from the order, nor is it explained in any of the testimony that has been introduced upon the hearing.

It is contended, however, as against the acts of the defendant Kinyoun, that in an interview with Capt. C. M. Goodall, of the Pacific Coast Steamship Company, he informed the latter that the orders which had been issued concerning travel between San Francisco and other states and territories were applicable to persons traveling between San Francisco and the port of Eureka. This claim is not supported by the testimony of Capt. Goodall. Indeed, the testimony of

Capt. Goodall and of the defendant Kinyoun are substantially in accord, to the effect that the defendant Kinyoun simply gave it as his opinion that vessels arriving at the port of Eureka would be subject to inspection by the quarantine officer at that port, and that such an inspection might result in placing the vessel and its passengers in quarantine, unless, in addition to the regular sanitary inspection of the vessel at San Francisco, the passengers had certificates of health from the marine hospital officer at San Francisco. But the defendant Kinyoun does not appear to have required, as a condition or restriction upon the departure of either the vessel or the passengers, that passengers should provide themselves with these health certificates. It was optional with the passengers to procure health certificates or not, as they should see fit, as a matter of convenience or protection to themselves. We must therefore hold that the defendant Kinyoun did not violate the order of the court in restraining the complainant or the other Chinese persons mentioned from departing from the city and county of San Francisco for the port of Eureka, as charged in the petition for the order to show cause.

We find no evidence to support the complainant's contention that after the injunction had been issued the defendant Kinyoun continued to discriminate, in his orders and regulations, against the Chinese as a class. It is true, there was some testimony introduced to the effect that the defendant required of the complainant, and other Chinese applicants for health certificates, information as to whether they had been exposed to the plague or had been within the quarantined district, but it does not appear that this information was required of Chinese applicants exclusively. So far as appears from the testimony before the court, this information was required of all persons applying for health certificates. This feature of the case may therefore be dismissed without further comment.

It is further urged that the court determined in this case that the regulations of May 21, 1900, issued by the surgeon general of the marine hospital service, were without authority of law, because no presidential proclamation has been issued, as required by the act of March 27, 1890, authorizing such regulations, and that enforcement of these regulations by the defendant Kinyoun, as required by his telegrams of June 15, 1900, was itself a contempt of court. The answer to this contention is that the court did not find it necessary to decide whether the regulations of May 21, 1900, were duly authorized by presidential proclamation or not, and therefore did not decide that question. What the court did was to suggest that it might be a question in the case, if it were necessary to be considered, but placed the decision upon other grounds. It follows from what has been said that it does not appear that the defendant Kinyoun has violated the injunction of the court in this case, and the order to show cause will therefore be discharged.

DE HAVEN, District Judge, concurs in this opinion.