CASE 49—MOTION BY THE L. & N. R. R. CO., AGAINST JUDGE SHACK-
ELFORD MILLER FOR A WRIT OF PROHIBITION—JAN. 10.

## Louisville & N. R. R. Co. v. Miller.

COURT OF APPEALS—POWER TO ISSUE WRIT OF PROHIBITION—CON-
TEMPT IN VIOLATING INJUNCTION—CONSTRUCTION OF ORDER OF IN-
JUNCTION.

Held:    1. The court of appeals has jurisdiction to issue a writ of
prohibition to restrain a trial court from proceeding to en-
force an order adjudging a defendant to be in contempt, and
imposing a fine for an alleged violation of an order of in-
junction, where the act complained of is not within the order,
fairly construed.

2. Where a railroad company was required by mandatory injunc-
tion to receive at any of its stations in Kentucky, and to "bill,"

transport, transfer, switch, and deliver in the customary way at a certain point of physical connection between the tracks of said company and another railroad company at Louisville, Ky., any live stock and other freight consigned to the latter company for a certain stock yards company, and to so "transfer, switch, and deliver" to the latter company and at said point of physical connection any and all live stock and other freight "coming over its lines in Kentucky" consigned to said stock yards company at its stock yards, the order does not embrace live stock shipped from another State, which was originally billed and consigned merely to Louisville, Ky., and not to the stock yards, but the destination of which, by agreement between the consignor and consignee, was changed to that point after it was shipped.

3. The language of an order of injunction should not be stretched to cover acts not fairly and reasonably within its meaning.

HELM, BRUCE & HELM, FOR PETITIONER.

This case comes out to the court on the application of the railroad company for a writ of prohibition against Judge Miller.

The question involved lies between very narrow limits, and involves simply a construction of an order of court.

A suit was brought in the Jefferson circuit court, and fell to the chancery division, by the Central Stock Yards Company against the L. & N. R. R. Co., seeking to have certain stock delivered at the Central Stock Yards Company. The case being fully prepared by affidavits, the court entered an order which contains *two* ideas, one is that the railroad company should receive at *stations in Kentucky*, all stock offered to it, and should consign that stock to the Central Stock Yards Company if required by the shipper, and should deliver the stock accordingly. The other idea is, that if stock be delivered to the company for shipment *outside of Kentucky*, that it shall be delivered *according to the consignment*. The language of the order is as follows:

"The court being advised, delivered a written opinion herein which is ordered to be and is now filed and made part of the record herein.

And in pursuance of said opinion it is ordered and adjudged that the defendant, Louisville & Nashville Railroad Company, be enjoined and restrained from neglecting or refusing to receive, and said Louisville & Nashville Railroad Company is hereby required and compelled, until further order

of the court herein, to receive *at any and all of its stations in Kentucky*, and to bill, transport, transfer, switch and deliver in the customary way, at its most convenient and practical point of physical connection between its tracks in Louisville, Kentucky, and the tracks of the Southern Railway in Kentucky, at Louisville, Kentucky, and at their Seventh and Magnolia street connection, any and all live stock and other freight *consigned* to the *Southern Railway Company* in Kentucky at Louisville, Kentucky, for the Central Stock Yards Company for transportation and delivery by said Southern Railway Company in Kentucky to plaintiff at Central Stock Yards, Kentucky, or any other person or persons *at said station* or in *care of said Central Stock Yard Company* at said station, and to so transfer, switch and deliver to said Southern Railway Company in Kentucky, at Louisville, Kentucky, and at said point of physical connection, any and all live stock and other freight coming over its lines in Kentucky *consigned* to *the Central Stock Yards Company* at Central Stock Yards, Kentucky, or any person or persons *at said station* or in care of *said Central Stock Yards Company at said station* for transportation and delivery by said Southern Railway Company in Kentucky, at Louisville, Kentucky, *as so billed and consigned.*" "The foregoing order will be issued by the clerk and become effective from and after the execution of bond by the plaintiff to the defendant to be approved by the clerk of this court and conditioned as required by law, in the sum of ten thousand dollars." After this order was entered, certain stock was offered to the L. & N. R. R. Co. at Columbia, Tennessee, and the company was requested to consign it to the Central Stock Yards via Southern Railway, but the company refused to so consign the goods, and then a contract was made between the shipper and the railroad company by which the stock was *consigned to Louisville*, Kentucky, and being so consigned was delivered at the regularly established live stock depot, in Louisville, Kentucky, viz. the Bourbon Stock Yards. The Central Stock Yards Company contends that its stock yards are not in Louisville. When the stock reached South Louisville, the consignee under the authority of the consignor demanded that the cars of the L. & N. R. R. Co. should be stopped at that point and delivered to the Southern Railway Company to be carried on its track to the Central Stock Yards, and this the L. & N. R. R. Co. refused to do, but carried the stock on to the Bourbon Stock Yards and there delivered it. When this was done a rule was obtained from the

Louisville & N. R. R. Co. v. Miller.

Jefferson circuit court, chancery division, against the L. & N. R. R. Co. to show cause why it should not be punished for contempt for disobeying the order of the court quoted above. The company responded showing the facts above stated, which facts are shown by the affidavits which served as the foundation for the rule. And now the question is, How can the acts of the L. & N. R. R. Co on the facts stated, possibly be a violation of the order of injunction? If it is not a violation then we submit that the court has no right to cut off the company from the remedy given by law to all litigants when an injunction is granted or modified, of going to a judge of this court and asking him to dissolve or modify it. We do not think it is now proper to discuss the merits of the question, because we concede that we could not on this application, question the correctness of Judge Miller's decision upon the merits. The only question is whether or not the acts complained of are violative of the order already granted. If they are not, then we respectfully insist that Judge Miller, holding to the view he does, should have granted an injunction against us in which event we would have had the legal remedy of coming to this court, but when he adopted the course he does and declares that that is violative of the injunction, which on the face of it does not in spirit or in letter cover the act, the effect is to cut us off from the remedy given by law.

On the question of the right of this court to grant the writ, in view of the fact that the lower court had jurisdiction, we refer to the cases of Hindman v. Toney, 97 Ky., 413; and Weaver v. Toney, 21 Ky. Law Rep., 1157. If the facts constitute a violation of the first section of the order of injunction, then the last section of the order is without value. Can it be said that the L. & N. received the freight at South Louisville when it had had charge of the freight ever since it left Columbia, Tennessee? There was no surrender of the original bill of lading, nor an offer to rebill the stock at South Louisville. Under all the circumstances we submit that the company ought not to be cut off from the legal remedies provided by law. This will be the result if all shipments until the final hearing in this court shall be controlled by adjudging that acts come within the order which in fact do not come within it. If the court thinks there was no violation of the order we submit that it is its duty to grant the writ and let us have a new injunction and then let us resort to the remedies given by law to all litigants.

A. BARNETT, DODD & DODD, W. M. SMITH AND JAMES H. HAZELRIGG, ATTORNEYS FOR MILLER.

1. The defendant demurs to the petition and says it does not state facts sufficient to constitute any cause of action against him.

2. The petition does not contain any true and complete transcript of the record upon which it is sought to subject him to a prohibition; the court has no way of determining from the petition and exhibits the grounds and reasons upon which he acted in making the judgment complained of by uncertified scraps of the record.

3. The exhibit "K" filed with the petition which purports to be a copy of the order of the court, is neither a true or correct copy, and it is not certified by the clerk of the court, and further he says that on January 4, 1902, no order was entered in said case, and in evidence thereof he filed herewith as part hereof an affidavit of the clerk of the chancery division of the Jefferson circuit court.

4. At the time the order was made imposing a fine for contempt of court, no copy of which is exhibited with the petition, the L. & N. R. R. Co. was before the court on service of process, and entered its appearance and resisted (1) the issuing of any injunction, and (2) to the imposition of the fine complained of, and the court thereby had full jurisdiction over the parties and over the subject matter and rendered a judgment, not exhibited with the petition, according to the best lights he had, and, as he believes, in accordance with law.

5. He objected most strenuously to the plaintiff in this case, attempting in substance to prosecuting an appeal from an interlocutory order, when no transcript is exhibited to the court, so that it may see and judge whether the matter is subject to reversal on appeal by way of a prohibition.

6. The plaintiff does not disclose the fact in the petition, that it had formerly been proceeded against and fined the moderate sum of $10 for contempt of court, and that when the second offense came along that fine was doubled.

OPINION OF THE COURT BY JUDGE DURELLE—GRANTING WRIT.

The Central Stock Yards Company brought suit in the Jefferson circuit court against the Louisville & Nashville Railroad Company seeking to have certain live stock delivered to the Central Stock Yards Company at the Central

Louisville & N. R. R. Co. v. Miller.

Stock Yards station. The suit was duly allotted to the chancery division. Application having been made and affidavits filed, the court delivered a written opinion, and entered an order as follows: "And in pursuance of said opinion it is ordered and adjudged that the defendant Louisville & Nashville Railroad Company be enjoined and restrained from neglecting, failing or refusing to receive, and said Louisville & Nashville Railroad Company is hereby required and compelled until further order of the court herein to receive, at any and all of its stations in Kentucky, and to bill, transport, transfer, switch, and deliver in the customary way at its most convenient and practical point of physical connection between its tracks in Louisville, Kentucky, and the tracks of the Southern Railway Company in Kentucky at Louisville, Kentucky, and at their Seventh and Magnolia connection, any and all live stock and other freight consigned to the Southern Railway Company in Kentucky at Louisville, Kentucky, for the Central Stock Yards Company, for transportation and delivery by said Southern Railway Company in Kentucky to plaintiff at Central Stock Yards, Kentucky, or any other person or persons at said station, or in care of said Central Stock Yards Company, at said station, and to so transfer, switch, and deliver to said Southern Railway Company in Kentucky at Louisville, Kentucky, and at said point of physical connection, any and all live stock and other freight coming over its lines in Kentucky consigned to the Central Stock Yards Company at Central Stock Yards, Kentucky, or any other person or persons at said station, or in care of said Central Stock Yards Company at said station, for transportation and delivery by said Southern Railway Company in Kentucky at Louisville, Kentucky, and so billed and consigned."    After the

entry of the order, live stock was offered to the railroad
company at Columbia, Tenn., and the company requested
to bill and consign the stock to the Central Stock Yards
via the Southern Railway in Kentucky.    The Nashville
Railroad Company refused to so bill and consign the live
stock, but it was received and billed and consigned to
Louisville, Ky.    The Louisville & Nashville Railroad Com-
pany's live stock station in Louisville is the Bourbon
Stock Yards.    When the consignment reached South Lou-
isville, the consignee, by authority of the consignor, de-
manded that the cars containing the shipment be stopped
at that point and delivered to the Southern Railway Com-
pany in Kentucky, to be carried on the track of the latter
company to the Central Stock Yards station—which is not
in Louisville,—and there delivered to the Central Stock
Yards Company.    The Louisville & Nashville Railroad
Company refused to comply with this demand, but carried
the shipment to the Bourbon Stock Yards, its live stock
station in Louisville.    A rule issued from the circuit
court against the Louisville & Nashville Railroad Com-
pany to show cause why it should not be punished for con-
tempt for disobeying the order of court before mentioned.
The facts herein stated having been made to appear, the
railroad company was adjudged guilty of contempt in dis-
obeying the order, and fined.    The railroad company has
applied to this court for a writ of prohibition prohibiting
the judge of the chancery division of the Jefferson circuit
court from proceeding to carry into effect or execution
the order adjudging the railroad company guilty of con-
tempt and fining it.

The first question is as to the power of this court in the
premises.    The case of Hindman v. Toney, 97 Ky.,
413 (17 R. 286) 30 S. W., 1006, and Weaver v. Toney

Louisville & N. R. R. Co. v. Miller.

107 Ky. 419 (21 R. 1157) 54 S. W., 732, 50 L. R.
A., 105, seem conclusive that this court has power to
grant the writ if a case has been presented for the exercise
of the power.    It is manifest that no question is here pre-
sented which in any way involves the merits of the litiga-
tion in which the order was made.    It is immaterial in
this proceeding to inquire whether the trial court did right
in making the order of injunction, or whether it might
properly have enjoined the Louisville & Nashville Railroad
Company from doing the acts admitted to have been done.
The sole question here is whether those acts are a viola-
tion of the order of injunction, fairly construed.    No
other question is considered or decided upon this applica-
tion.    An examination of the order of injunction shows it
to be divided into two clauses, and that each clause re-
lates, and was intended to relate, to a different class of
railroad traffic.    The first clause requires the railroad
company to receive live stock at any and all of its stations
in Kentucky, and to bill and transport and deliver such
live stock to the Southern Railway Company at Louisville
for transportation to the Central Stock Yards Company at
Central Stock Yards station, when so required by the con-
signor.    This clause refers to and provides for the tran-
sportation of live stock consigned to the Central Stock
Yards Company or the Southern Railway Company from
points within the State.    The second clause applies to
shipments from beyond the boundary of the State, and re-
quires the Louisville & Nashville Company to transport
and deliver live stock shipped from points outside the
State in the same manner if such live stock is so billed
and consigned.    The live stock here in question was
billed and consigned from a point outside of the State to
Louisville, and not to Central Stock Yards station.
Whether the railroad company's refusal to accept the con-

signment to the Central Stock Yards via the Southern Railway was legal or illegal, it was certainly not a violation of the order, and therefore. not a contempt.

Was the railroad company's refusal to change the destination of the shipment at South Louisville a disobedience of the order? In his opinion upon the rule for contempt the learned chancellor has argued at some length, and with his accustomed ability and clearness, that the consignor and the consignee had the legal right to change the destination of the shipment, and that it was the legal duty of the railroad company to comply with their demand. In the view we have taken of the matter, this is not material. It is not a question of what the chancellor had the right to order, but of what he did order. Fairly construed, the order of injunction does not, in either clause, in our opinion, cover an attempt to change the destination of a shipment made in another State. Upon an application to a judge of this court to dissolve or modify the order, we do not think this question would be considered as involved. The petitioner, therefore, if the order be now construed to cover a change of destination, is deprived of his right of application to a judge of this court upon the question of the chancellor's right to make an order covering such change of destination.

The procedure by rule for contempt should not be exercised unless a case is presented of actual disobedience. We do not think such a case is presented here. The entry of an order of injunction is, in some respects, analogous to the publication of a penal statute. It is a notice to the parties that certain things must be done or not done, under a penalty to be fixed by the court. The language of such notice should not be stretched to cover acts not fairly and reasonably within its meaning. In the case at

bar the differences of opinion which have appeared as to the proper construction of this order indicate that it is at least doubtful whether it covers the acts complained of, and we are of opinion that it ought not to be so construed or understood.

The writ of prohibition may go.

The whole court sitting.

Justices Paynter, Hobson and White, dissenting.