# Ginsberg, Mayor, et al. v. Kentucky Utilities Co. et al. (two cases).

(Decided May 7, 1935.)

(As Modified on Denial of Rehearing June 18, 1935.)

ARTHUR RHORER and LOW & BRYANT for appellants.

W. E. CABELL, J. E. SAMPSON, N. R. PATTERSON and GORDON, LAURENT & OGDEN for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Middlesboro is a city of the third class and has for some years been operating under the commission form of government. On July 27, 1932, the board of commissioners of the city, pursuant to chapter 119, Acts of 1932 (Kentucky Statutes 1933 Supp., secs. 3480d-1 to 3480d-22, enacted an ordinance providing for the construction of a municipally owned electrical generating plant and distribution system to be financed by the sale of 6 per cent. bonds in the sum of $300,000, which were

not to be a direct obligation of the city, but were to be retired by net revenues derived from the operation of the plant.

There was no petition presented to the board protesting against the ordinance or asking for a referendum vote as provided by law in the event it was not repealed, and it therefore became effective and final at the expiration of ten days after its passage. Kentucky Statutes, sec. 3480b-23. Because of the general business depression, the city was unable to find a market for its bonds or to secure funds to finance the project until February, 1934, when an application of the city to the United States through its Public Works Administration received favorable consideration. Under an agreement entered into, the federal government proposed to furnish for the purposes indicated the sum of $328,000, 30 per cent. of which was to be a gift and the balance to be evidenced by bonds bearing 4 per cent. interest, which were to be retired through a course of years out of the net revenues of the plant. On February 6, 1934, the city commissioners passed on its first reading an ordinance entitled:

"An ordinance approving a loan agreement between the City of Middlesboro, Bell County, Kentucky, and the United States of America, Covering a Federal loan and grant in the aggregate amount of $328,000.00, for the purpose of financing the construction of a municipal electric power plant and distribution system, and declaring an emergency."

This ordinance was finally passed and adopted on February 13, 1934. It provided that the city should accept the loan agreement drawn up by the federal authorities for the financing of the project by the United States. On the day of the final passage of the loan agreement ordinance, a petition signed by voters of the city equal in number to over 58 per cent. of the total vote cast at the last regular election for mayor was presented to and filed with the board of commissioners, protesting against the passage of the ordinance, requesting that it be reconsidered and repealed, but if that be not done, then that the board of commissioners submit to the voters the question as to whether the ordinance should go into effect. The petition, omitting signatures and certificate regarding genuineness of signatures, reads:

"To the Board of Commissioners of the City of Middlesboro, Kentucky:

"Each of the undersigned does hereby represent that he is a citizen and a legally qualified voter of the City of Middlesboro, Kentucky, and that he resides at the address set opposite his signature hereto.

"As such citizens and legally qualified voters of said City of Middlesboro, Kentucky, we do hereby protest against the passage of an ordinance entitled:

"'An ordinance approving a loan agreement between the City of Middlesboro, Bell County, Kentucky, and the United States of America, covering a federal loan and grant in the aggregate amount of three hundred twenty-eight thousand [328,000] dollars for the purpose of financing the construction of a municipal electric power plant and distribution system, and declaring an emergency,' which ordinance was introduced and passed on its first reading February 6th, 1934, and by the terms of which ordinance the City of Middlesboro, Kentucky, agrees to and accepts the loan agreement therein set forth, and by the terms of which ordinance the Mayor and City Clerk of said City are authorized to execute said loan agreement on behalf of the city and to deliver the same after such execution to the Federal Emergency Administration of Public Works.

"We do further request that said ordinance be reconsidered by the Board of Commissioners and repealed; and if the same shall not be so repealed, the Board of Commissioners submit to the voters of the whole city, in the manner and form provided by law, the question as to whether said ordinance shall go into effect."

The board of commissioners failed to take any action as requested by the petition and the Kentucky Utilities Company, as a taxpayer of the city, and J. M. Hurst and J. H. Woodson, as citizens and taxpayers thereof, instituted this action seeking to enjoin the mayor and the board from carrying into execution the loan agreement.

The motion for a temporary injunction in the lower court was overruled, whereupon a motion for such injunction was made before Judge Dietzman and was granted in conformity with an opinion rendered by him and concurred in by all the members of the court except Judge Thomas who was absent. This opinion is found in 255 Ky. 148, 72 S. W. (2d) 738, 745. The motion for an injunction reads:

"Plaintiffs, Kentucky Utilities Company, J. H. Woodson and J. M. Hurst, move the Court for an order granting a temporary injunction against the defendants, Ike Ginsberg, H. B. Stallard and John Burch, constituting the Mayor and Board of Commissioners of the City of Middlesboro, and City of Middlesboro, Kentucky, enjoining and restraining them from taking any step to carry out or perform any of the terms, provisions or conditions set out in the loan agreement referred to in the petition."

The opinion rendered by Judge Dietzman contained an exhaustive statement of the facts and proceedings up to that time. It also makes reference to the material conditions and provisions in the loan agreement which is set forth at length in the ordinance complained of and also states in substance that plaintiffs in their petition, as amended, pitch their cause of action (1) on the ground that the ordinance in question was subject to a referendum in accordance with the provisions of sections 3480b-23 to 3480b-26, inclusive, of the Statutes, and until the ordinance was approved by the voters at a referendum election as provided by these sections, the loan agreement could not be carried into execution, and (2) that the loan agreement is itself invalid for many alleged reasons, and among others assigned is that its terms prevent free, open, and unrestricted competitive bidding as required by law.

The order entered by Judge Dietzman reads:

"It is, therefore, my order that a temporary injunction issue herein, enjoining until further orders of court the defendants from taking any steps to carry out or to perform any of the terms, provisions, or conditions set out in the loan agreement ordinance of February, 1934, unless and until a referendum according to the Statutes in such cases made and

provided shall have been held and a majority of the voters voting thereon have voted in favor of such ordinance. The plaintiff will execute bond conditioned according to law before the clerk of the Bell circuit court in the sum of $1,000.''

The prayer of plaintiffs' petition in substance is (1) that they be granted a writ of mandamus against the board of commissioners to reconsider the ordinance finally passed and adopted on February 12, approving the loan agreement and repeal same; but that if the ordinance be not repealed, that the board be required to submit to the voters of the city in the manner provided by law the question as to whether or not the ordinance shall go into effect, and (2) ''that the defendants be enjoined and restrained from taking any steps to carry out or perform any of the terms, provisions or conditions set out in the loan agreement referred to in the petition.''

Neither the petition, as amended, nor the opinion rendered by Judge Dietzman makes any reference to a supplemental ordinance passed by the board of commissioners on its final reading on February 21, 1934, which amended the original bond ordinance of July, 1932, so that instead of selling the bonds on competitive bids, they should be sold to the United States government as provided in the loan agreement. It reduced the amount of bonds from $300,000, as provided in the original ordinance, to $262,000, and reduced the rate of interest from 6 per cent. to 4 per cent.

After the order of Judge Dietzman granting the temporary injunction had been handed down, nothing further was done until June 19, 1934, when the board of commissioners passed an ordinance repealing the loan agreement ordinance of February 13, 1934, and also introduced and passed on first reading an ordinance amending the supplemental bond ordinance of February 21, 1934, by removing therefrom all reference and provisions concerning the loan agreement with the United States government and providing that the bonds authorized by the original ordinance should be advertised and offered for sale on competitive bidding. These ordinances were passed on June 20. No petition has been filed requesting an election on the latter ordinance.

On June 22, 1934, plaintiffs entered a motion for a

rule against defendants to show cause why they should not be punished for contempt for a violation of the orders of the injunction issued by Judge Dietzman and in support of the motion filed an affidavit, which after referring to the granting of the temporary · injunction and the execution of the bond by defendants as required by the order, set out the facts relating to the passage of the ordinances introduced on the 19th day of June, 1934, and filed the ordinances with and makes them a part of the affidavit. It is further made to appear in the affidavit that the city authorities had advertised for bids for the sale of $262,000 electric power plant and revenue bonds as prescribed by the ordinance, and that the board of commissioners would undertake to accept bids for such bonds and to sell the bonds and use the proceeds for the construction of an electric lighting plant in the city.

Defendants entered a motion to discharge the rule against them because the facts stated and set out in the motion and affidavit did not show a violation of the injunction and also a motion to strike certain portions of the evidence and also filed a demurrer and response. In their response they set up the ordinances adopted on June 20 and say that their action in adopting these ordinances is in full accord with the injunction and complies with it in every respect.

On final hearing on the rule it was adjudged that the defendants had violated the · injunction issued by Judge Dietzman and were guilty of contempt because thereof and a fine of $10 was assessed against each of them. It was further ordered that they assemble and repeal the two ordinances of June 19, 1934, and that when this was done and the fines assessed paid, the contempt should be purged and not otherwise.

In a second amended petition plaintiffs alleged in substance that the board, in passing the ordinances of June 19, was merely attempting to evade the effect of the temporary injunction which had been granted, and that in order to receive funds sufficient to complete the plant, the city would be forced to accept a gift from the government as provided in the loan agreement, and thereby would be put to the necessity of accepting a bid which had been made by the government under the latter ordinances; and unless enjoined, defendants

would accept the bid of the United States government and the acceptance of such bid would constitute a contract between the city of Middlesboro and the United States, containing all the illegal terms, conditions, and provisions set forth in the loan agreement ordinances specifically referred to in the first amended petition.

Defendants made a general denial of the allegations of the second amended petition and alleged that the ordinances of June 19 were passed to conform with the order of the injunction and were passed in good faith and further alleged that as many as eleven responsible persons or concerns who were ready and willing to purchase the bonds proposed to be issued under the ordinance in question had expressed an intention of submitting bids therefor and would have submitted bids according to the advertisement except for the fact that defendants were prevented from continuing their advertisement for bids by the action of plaintiffs in instituting contempt proceedings. The parties filed a stipulation of facts relating to the ordinances, the petition for referendum, etc., hereinbefore referred to.

The cause was submitted upon the pleadings and a stipulation of facts including all documents referred to therein, and it was adjudged that the temporary injunction theretofore granted be made permanent and that defendants be perpetually enjoined from taking any steps to arrange or provide for the construction of a municipal light plant or any part thereof, unless and until a referendum, as provided by the statute in such cases, shall have been held and a majority of the voters voting in the referendum election vote in favor of an ordinance authorizing the construction of such plant. From this judgment and the judgment in the contempt proceedings, plaintiffs are prosecuting this appeal.

It is the contention of counsel for appellants that because of conditions, which it is unnecessary to enumerate here, they were faced with the necessity of taking prompt action looking to the acquisition of a power and light plant, and that in passing the ordinances subsequent to the granting of the temporary injunction, they acted in the utmost good faith in an attempt to avoid a breach of the injunction. On the other hand counsel for appellees maintain that the methods pursued by the board of commissioners were adopted as a means of avoiding the injunction and to effect the

same purpose in practically the same manner as they proposed to under the loan agreement.

No cases have been cited and none have been disclosed by an exhaustive research that are directly in point, therefore, in determining the questions presented, we must look to general principles pertaining to the violation of the injunction orders. There is a principle running through all authorities that injunction orders must be honestly and fairly obeyed and courts will not tolerate schemes or subterfuges, however artfully they may be clothed to disguise their real nature and purpose, if they are in fact designed to thwart the court's decrees; and the violation of the spirit of an injunction is a breach of the court's mandate even though its strict letter may not have been disregarded. West Disinfecting Co. v. Koppelman, 216 Ill. App. 438; Ex parte State, 162 Ala. 181, 50 So. 143; Weston v. John L. Roper Lbr. Co., 158 N. C. 270, 73 S. E. 799, Ann Cas. 1913D, 373.

Here, as will be noted from our recital of the facts, the referendum petition protested against the passage of the ordinances approving the loan agreement between the city and the United States government and asked that it be repealed, and, if it be not repealed, that the commissioners submit to the voters of the city in the manner provided by law the question as to whether the ordinance should go into effect. The prayer of the petition as hereinbefore recited was based on allegations that the loan agreement ordinance was subject to a referendum, and until the ordinance was approved by the voters at a referendum election, the loan agreement could not be carried into effect; and further that the loan agreement itself, for reasons recited in Judge Dietzman's opinion, was invalid. The motion and temporary injunction only pertained to the loan agreement ordinances. Unquestionably the board of commissioners had a right to repeal the loan agreement ordinances notwithstanding the order of injunction, and appellees cannot complain, since that is what they sought. As indicated in Deming v. Bradstreet, 85 Conn. 650, 84 A. 116, defendants must obey a temporary injunction as construed in the light of the purposes of the original suit as shown by the pleadings and the relief prayed for. The purpose of this suit, as is clearly manifested by the petition and the relief prayed for, was to enjoin

the carrying into effect of the loan agreement ordinance until it had been approved by a majority of the voters of the city at a referendum election and the chief ground of attack upon the loan agreement ordinance was that it cut off competitive bidding for the bonds. These objections were removed when the ordinance was repealed and it therefore remains to be determined whether in passing the ordinances of June 19, and attempting to proceed thereunder, the board of commissioners violated the temporary injunction. In 32 C. J. 492 it is said:

"Where the enforcement of an ordinance has been enjoined on the ground that certain provisions of the ordinance are invalid, the passage and enforcement of a new ordinance on the same subject, without such invalid provisions is not a violation of the injunction; but an attempt to evade an injunction by passing another ordinance similar to the one enjoined is a contempt."

In support of the first proposition laid down in this quoted excerpt, Wong Wai v. Williamson et al. (C. C.) 103 F. 384, Ledwith v. Jacksonville, 32 Fla. 1, 13 So. 454, and Young v. Ridgetown, 18 Ont. 140, are cited and these cases clearly support that portion of the text.

The same principle applies in this case as does in cases where the city council has repealed or amended and enacted a new ordinance after a referendum has been asked on the previous ordinance. In such cases we find the general rule to be that where a referendum petition is presented to the city council and the ordinance is repealed, the council may not thereafter pass the same ordinance or one in all essential features like it and thus evade the referendum; but it may legislate on the same subject-matter provided it acts in good faith and not with a purpose to evade the referendum and providing further that the new ordinance differs in essential features from the old one. In re Stratham, 45 Cal. App. 436, 187 P. 986; State v. Meining, 133 Minn. 98, 157 N. W. 991, 992; 43 C. J. 594.

In the Meining Case, after referring to the general principle that the same or a similar ordinance may not be passed to evade a referendum on a former ordinance, it is said:

"But it is equally clear that the council is not prevented from legislating on the subject-matter of the dead ordinance. It doubtless may, if it acts in good faith and with no .intent to evade the effect of the referendum petition, pass an ordinance covering the same subject-matter that is essentially different from the ordinance protested against, avoiding, perhaps, the objections made to the first ordinance."

In the case of Louisville & N. Ry. Co. v. Miller, 112 Ky. 464, 66 S. W. 5, 7, 23 Ky. Law Rep. 1714, it is said:

"The procedure by rule for contempt should not be exercised unless a case is presented of actual disobedience. We do not think such a case is presented here. The entry of an order of injunction is, in some respects, analogous to the publication of a penal statute. It is a notice to the parties that certain things must be done or not done, under a penalty to be fixed by the court. The language of such notice should not be stretched to cover acts not fairly and reasonably within its meaning."

The ordinance under which the board of commissioners is now proposing to proceed is essentially different from the ordinance complained of and which they were enjoined from proceeding under until authorized by a referendum vote and the principal objectionable features complained of in the petition have been removed. It is apparent that appellants have violated neither the spirit nor the letter of the temporary injunction, and the court erred in adjudging that they did. It necessarily follows that the court erred in making the temporary injunction permanent, except in so far as it related to the loan agreement ordinance. This conclusion renders it unnecessary to determine any other questions and they are expressly reserved.

Wherefore the judgment is reversed with directions to enter judgment in conformity with this opinion.

Whole court sitting.