## Board of Com'rs of City of Middlesboro et al. v. Kentucky Utilities Co. et al.

(Decided June 19, 1936.)

ARTHUR RHORER and LOW & BRYANT for appellants.

GORDON, LAURENT & OGDEN, N. R. PATTERSON, J. E. SAMPSON and W. E. CABELL for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

On July 27, 1932, "the Board of Commissioners of the City of Middlesboro adopted, on its final reading, an ordinance declaring the necessity for the construction of a municipal electric light, heat and power system, including a distribution and street lighting system, with-

in the corporate limits of the city. This ordinance provided for raising funds for the payment of such construction by authorizing the issuance of $300,000.00 of 6% special obligation bonds, pursuant to chapter 119 of the 1932 Acts of the General Assembly of the Commonwealth of Kentucky. The bonds authorized by the ordinance were payable solely from a fixed portion of the revenues of the system.''

It specifically provided for the creation, operation, and maintenance of a depreciation account, to be maintained from the revenues of the system; no portion of the moneys derived from general taxes or from other general revenues of the city was to be used for construction purposes or for the purpose of operating or maintaining the system when acquired.

No petition was filed by any citizen or group of citizens of the city of Middlesboro requesting a referendum on this ordinance.

After its enactment, the city found that there was no market for its bonds and, upon the creation of the Public Works Administration in 1933, the city filed an application with it offering the bonds to the United States government.

The application was approved and a loan and grant agreement presented to the city by the United States government in February, 1934, by which the government offered to purchase the bonds of the city in the principal amount of $262,000, to bear interest at the rate of 4 per cent. per annum.

The loan and grant agreement was, by an ordinance, approved by the board of commissioners of the city, and the mayor directed to execute the agreement, on behalf of the city.

In the same month the board of commissioners adopted a second ordinance pertaining to the issuance of electric light plant revenue bonds. This ordinance was for the purpose of supplementing the July, 1932, bond ordinance, so as to make the dates, maturities, amounts, and the rate of interest of the bonds conform to the loan and grant agreement.

There was no protest filed by any citizen or group of citizens of the city against the adoption of this supplemental bond ordinance.

The ordinance approving the loan and grant agreement was introduced on its first reading on February 6, 1934, and passed on the second reading on February 12, 1934, and had its third reading February 13, 1934.

A petition of protest was filed against the passage of this loan and grant agreement ordinance.

On March 31, 1934, the board of commissioners adopted, on its final reading, an ordinance approving the plans and specifications for a municipal electric light plant and distribution system, and authorized the advertisement for bids.

No protest was filed against this ordinance by any citizen of any group of citizens of the city.

As pertaining to the loan and grant agreement ordinance, finally approved by ordinance February 13, 1934, it was the city's position that it was not subject to referendum, which resulted in a suit being filed in the Bell circuit court, styled Kentucky Utilities Co. et al. v. Ige Ginsberg et al.

The lower court refused to grant plaintiffs a temporary injunction; a motion was duly filed before Justice Dietzman, a member of this court, and a temporary injunction was ordered by him, when it was held that the loan and grant agreement ordinance was subject to the referendum provisions of the statutes. The whole court except Judge Thomas, who was absent, concurred in Judge Dietzman's opinion.

On June 30, 1934, the board of commissioners by an ordinance repealed the loan and grant agreement ordinance and adopted an ordinance amending the February, 1934, bond ordinance so as to provide for a public sale of its electric plant revenue bonds.

A petition of protest was not filed against the amendatory ordinance authorizing the public sale of the bonds. The Kentucky Utilities Company, however, proceeded against the mayor and other city officials in the Bell circuit court for contempt of court by making application for a rule for violating the temporary injunction, granted pursuant to Judge Dietzman's opinion.

This matter was tried in the lower court, which resulted in a fine for contempt of court. This court, however, in the case of Ginsberg v. Kentucky Utilities Co., 260 Ky. 60, 83 S. W. (2d) 497, ruled that the mayor and city officials were not in contempt of court.

Following this opinion, the board of commissioners, on August 20, 1935, passed, upon its final reading, an ordinance repealing the February, 1934, bond ordinance further repealing the June amendment to the February, 1934, ordinance and amending the March, 1934, plans and specifications ordinance, by striking therefrom the second and third paragraphs of the preamble and section 8 thereof, and adopting a plan of financing the construction, operation, and maintenance of the electric plant and distribution system.

Following the adoption of this ordinance, a petition of protest was filed by the Kentucky Utilities Company, signed by more than the required per cent. of voters of the city, protesting against the July, 1932, bond ordinance, the March 31, 1934, plans and specifications ordinance, and the August 20, 1935, repealing an amendatory ordinance. This protest was not considered well taken by the city and it is now the principal subject of this litigation.

It is the theory of the city that the ordinance of 1932 definitely determined the necessity for the construction of a municipal electric light and distribution plant, and a method of financing the cost of construction. And that the February, 1934, ordinance was a supplemental bond ordinance authorizing the issuance of the same kind and character of bonds as was authorized by the July, 1932, ordinance, with the exception of the interest rates, maturities, and number of bonds to be issued, and that no protest was filed against the latter ordinance. Its construction of the ordinance of June, 1934, is that it amended the February, 1934, ordinance, by authorizing and directing that the bonds be sold at public sale rather than to the United States government; and that the ordinance of August, 1935, repealed the February, 1934, ordinance and the June, 1934, ordinance.

It's contention is that the protest filed against the 1935 ordinance is ineffectual, since the ordinance does

not authorize the construction of the electric light plant and distribution system.

According to its analysis of these ordinances, no petition of protest has ever been filed against any ordinance authorizing the issuance of bonds, and likewise, no petition of protest has been filed at any time against any ordinance determining the necessity for the construction or in the construction of the electric light plant and distribution system.

It insists that:

"The protests filed by the citizens of the city of Middlesboro are as follows:

"1. A protest against the ordinance accepting the Loan and Grant Agreement. That ordinance has been repealed.

"2. A protest against the (1935) ordinance repealing the 1934 bond ordinance and readopting the bond provisions of the 1932 bond ordinance."

Excepting the ordinance of 1935, we reviewed and analyzed the foregoing ordinances in Kentucky Utilities Co. et al. v. Ginsberg et al., 255 Ky. 148, 72 S. W. (2d) 738, 743, and in Ginsberg, Mayor, et al. v. Kentucky Utilities Co. et al., 260 Ky. 60, 83 S. W. (2d) 497, 501.

The city is now presenting the same ordinances and the ordinance of 1935, as if none of them had heretofore been considered by this court in those cases. It is our duty to consider the ordinances antedating that of 1935 as we interpreted them in those cases, and not as if they were now presented to us for the first time.

The question before us in Kentucky Utilities Co. et al. v. Ginsberg et al., supra, was the right of the petitioners to ask for a referendum on the February, 1934, ordinance. It was our conclusion that the (February, 1934) ordinance "providing for the loan agreement falls squarely within the provisions of section 3480b-14. The argument that this ordinance is but an amendment of the ordinance of July, 1932, will not bear analysis. So totally different is the ordinance of 1934 from that of 1932 that the former cannot by any stretch of argument be considered an amendment of the latter ordinance." Continuing, we said:

"This being our conclusion * * * It is, therefore, my order that a temporary injunction issue herein, enjoining until further orders of court the defendants from taking any steps to carry out or to perform any of the terms, provisions, or conditions set out in the loan agreement ordinance of February, 1934, unless and until a referendum according to the Statutes in such cases made and provided shall have been held and a majority of the voters voting thereon have voted in favor of such ordinance."

In Ginsberg, Mayor, et al. v. Kentucky Utilities Co. et al., supra, we quoted the above order directing a temparary injunction in Kentucky Utilities Co. et al. v. Ginsberg et al. and impliedly approved in its entirety our opinion in the latter case. In Ginsberg, Mayor, et al. v. Kentucky Utilities Co. et al. an order of June, 1934, was involved. Then it was the contention of the city that the June ordinance, although adopted after the granting of the temporary injunction in Kentucky Utilities Co. et al. v. Ginsberg et al., was passed in good faith in an attempt to avoid a breach of the injunction. The utilities company argued the contrary. It was our conclusion that the motion for, and, the temporary injunction in Kentucky Utilities Co. et al. v. Ginsberg et al. "only pertained to the loan agreement ordinances." And "unquestionably the board of commissioners had a right to repeal the loan agreement ordinances notwithstanding the order of injunction, and appellees cannot complain, since that is what they sought. * * * The purpose of this suit, as is clearly manifested by the petition and the relief prayed for, was to enjoin carrying into effect of the loan agreement ordinance until it had been approved by a majority of the voters of the city at a referendum election and the chief ground of attack upon the loan agreement ordinance was that it cut off competitive bidding for the bonds. These objections were removed when the ordinance was repealed and it therefore remains to be determined whether in passing the ordinance of June 19, and attempting to proceed thereunder, the board of commissioners violated the temporary injunction. * * * The ordinance under which the board of commissioners is now proposing to proceed under (June 19, 1934), is essentially different from the ordinance complained of and which

they were enjoined from proceeding under until authorized by a referendum vote and the principal objectionable features complained of in the petition have been removed."

The city here argues that the 1935 ordinance merely repealed the February, 1934, bond ordinance and the June amendment to the 1934 ordinance, and amended the March, 1934, plans and specifications ordinance, by striking therefrom the second and third paragraphs of the preamble and section 8; and that since the July, 1932, ordinance determined the necessity for the construction of a municipal electric light plant and distribution system and the method of financing the cost of such construction, the 1935 ordinance is distinguishable from the ordinance of 1934, against the enforcement of which a temporary injunction was granted in Kentucky Utilities Co. et al. v. Ginsberg et al., supra.

And further that the 1935 ordinance is not subject to the protest authorized by sections 3480b-14 and 3480b-23, Ky. Stats. In substantiation of this argument, it insists that the 1935 ordinance orders the issuance of special obligations not to be satisfied by the levy and collection of a tax, and therefore is not within the purview of these sections. To sustain this insistence, it cites to us and relies on City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004; Williams v. Raceland, 245 Ky. 212, 53 S. W. (2d) 370; Wheeler v. City of Hopkinsville, 245 Ky. 388, 53 S. W. (2d) 740; Adams v. City of Ashland, 80 S. W. 1105, 26 Ky. Law Rep. 184; Shaver v. Rice, 209 Ky. 467, 273 S. W. 48; and many cases from other jurisdictions.

The vital, decisive question here under consideration and to be determined was not presented or considered in the Kirby, the Willams, the Wheeler, the Adams, and the Shaver Cases; nor in the foreign cases, to which our attention has been called.

In no one of the above domestic cases was either section 3480b-14 or section 3480b-23 involved. In a number of the foreign cases cited, the Constitution of the state in which the case originated provided for a referendum on legislation, and the court decided that such provision did not apply to public improvements of the character here involved.

Adhering to our ruling in Kentucky Utilities Co. et al. v. Ginsberg et al. that section 3480b-14 and section 3480b-23, Kentucky Statutes, were applicable to the ordinance of 1934, we are unable to conceive of any reason why they do not apply to the 1935 ordinance, in so far as it sets up a plan of financing the operation of the electric light plant and distribution system. We are unable to discern any material distinction in the intendment and purpose, the context and the effect of the two ordinances, though the ordinance of 1932 should be considered as a declaration of the intention of the city to install an electric light and distribution plant, as therein set forth. We are advised of no reason for recanting and adopting a different construction heretofore given the 1932 and 1934 ordinances. Nor are we pointed to any material difference between the 1934 and 1935 ordinances other than in the method of financing the plant and system.

An appropriate protest was filed against the 1935 ordinance. The expressed reasons that governed our constructon of the 1932 and the 1934 ordinances, and our holding in Kentucky Utilities Co. v. Ginsberg, that sections 3480b-14 and 3480b-23 were applicable to the 1934 ordinance, induce us now to rule they are applicable to the 1935 ordinance. The relief awarded which was against the 1934 ordinance was properly granted by the trial court, as to the 1935 ordinance.

The city contends that the Kentucky Utilities Company and the individuals who have joined with it in bringing this action have no legal right to institute and prosecute it. This question was determined adversely to the city in the opinion of Judge Dietzman, and it is unnecessary to restate or reconsider the reasons and authority therefor.

Other questions are presented in the briefs, but entertaining the views herein expressed, we do not think it necessary to discuss them.

The judgment is affirmed.

Whole court sitting.