[Crim. No. 694.   Second Appellate District, Division One.—January
12, 1920.]

In the Matter of the Application of GEORGE U. STRATHAM for a Writ of Habeas Corpus.

[1] MUNICIPAL CORPORATIONS—EMERGENCY LEGISLATION—HABEAS COR-
PUS—REVIEW OF COUNCIL'S DECISION.—Where the city council has
determined that facts existed constituting an emergency, and upon
that determination provided that an ordinance regulating the
solicitation of custom and patronage in or about railroad depots
and premises should take effect immediately upon its publication,
and the facts recited in the ordinance are such as reasonably
might be held to constitute an emergency, the courts will not, in
a proceeding on *habeas corpus* to secure the release of a person
arrested for a violation of such ordinance, undertake to investigate
the truth of the statement of facts as set forth in the ordinance
and substitute their decision for that of the city council.

[2] ID.—HABEAS CORPUS—MATTERS REVIEWED.—In a proceeding on
*habeas corpus* to secure the release of a person held in custody,
pursuant to arrest and upon a complaint filed in the police court
charging him with a violation of the provisions of such ordinance,
the court is concerned only with the jurisdiction of the police
court, whose authority is challenged on the ground that the facts
charged in the complaint against petitioner did not, at the time
of their occurrence, constitute a public offense.

[3] ID.—DECLARATION OF EMERGENCY—PROPRIETY AND EFFECT.—While
the mere declaration of the city council that a particular ordinance
is passed for immediate preservation of the public health, peace,
and safety is neither conclusive nor yet sufficient, the nature of
the ordinance itself will, in most instances, be determinative, and
where a sudden emergency has arisen, a statement of the nature of
the urgency finds proper place to support the declaration.

[4] ID.—REPEAL OF SUSPENDED ORDINANCE—SUBSEQUENT ENACTMENT
ON SAME SUBJECT MATTER—VALIDITY OF.—While, ordinarily, when
an ordinance which has been suspended by a referendum has been
repealed by the city council, the council cannot enact another ordi-
nance in all essential features like the repealed ordinance, the coun-
cil may deal further with the subject matter of the suspended
ordinance by enacting an ordinance essentially different from the
ordinance protested against, avoiding, perhaps, the objections made
to the first ordinance. If this be done, not in bad faith, and not
with intent to evade the effect of the referendum petition, the sec-
ond ordinance should not be held invalid for this cause.

[5] ID.—SOLICITATION AT RAILROAD DEPOTS—REGULATION BY ORDINANCE —REQUIREMENT OF WRITTEN CONSENT—LAWFUL DISCRIMINATION. A municipal ordinance which makes it unlawful to solicit custom and patronage for the transportation of persons and baggage for hire in or about a railroad depot within the city, or upon railroad property used in connection therewith, without first having obtained the written consent of the owner thereof, does not create an unlawful discrimination between persons who have and others who have not such consent.

PROCEEDING in Habeas Corpus to secure the release of a person held in custody for the violation of a municipal ordinance. Writ discharged.

The facts are stated in the opinion of the court.

Warren L. Williams for Petitioner.

Charles S. Burnell, City Attorney, Wm. P. Mealey, Assistant City Attorney, Erwin W. Widney, City Prosecutor, and J. D. Taggart, Deputy City Prosecutor, for Respondent.

CONREY, P. J.—In this proceeding it is duly shown that George U. Stratham is held in custody, pursuant to arrest and upon a complaint filed in the police court of the city of Los Angeles, charging him with the commission of a misdemeanor by willfully and unlawfully soliciting custom and patronage for the transportation of persons and baggage for hire in the Southern Pacific depot in said city and upon property used and occupied in conjunction with said depot, contrary to the provisions of an ordinance of the city.

The ordinance in question is No. 39551, new series, of the city of Los Angeles. This ordinance was passed by the city council on November 17, 1919, approved on the twenty-first day of November, 1919, and duly published on the twenty-fifth day of November, 1919. It was adopted as an emergency ordinance and as such, by its terms, became effective on the date of its publication, notwithstanding the referendum provisions of the city charter. The previous ordinances of the city upon the same subject had been expressly repealed by an ordinance approved on the twenty-third day of September, 1919, and from that time until the adoption of Ordinance No. 39551 there was no ordinance of the city in force regulating the solicitation of custom

and patronage in or about railroad depots and premises, etc., in said city. Ordinance No. 39551 recites these facts and declares that the absence of adequate prohibitory and regulatory legislation upon that subject has resulted, and will continue to result, in disturbance of the peace of the general public and the safety of the general public, and especially of the traveling public, etc., for which reasons "this ordinance is urgently required for the immediate preservation of the public peace, health and safety, and the city clerk shall certify to the passage of this ordinance by a three-fourths vote of the city council and cause it to be published once in The Los Angeles Daily Journal, and thereupon it shall take effect and shall thereafter be in force." The alleged offense of Stratham is charged to have been committed on the first day of December, 1919, which was within the thirty days' time allowed for the institution of proceedings for referendum upon ordinances to which the right of referendum applies.

On behalf of petitioner it is contended that at the time of the adoption of Ordinance No. 39551 there did not exist any urgency for the passage of the ordinance as an emergency ordinance, that it was not necessary for the immediate preservation of the public peace, health, and safety, that it was not, in fact, an emergency ordinance, and that, therefore, its operation was, by law, suspended for a period of thirty days from the date of publication thereof; also that Ordinance No. 39551 is void for the reason that a similar ordinance (No. 39385), adopted by the council, had been approved on the twenty-third day of September, 1919, and had been suspended by a referendum placed thereon by the voters of the city and had been thereafter repealed by the council, and that the subsequent Ordinance No. 39551 was enacted by the city council as an emergency ordinance in bad faith and with the intent to evade the effect of the referendum petition.

It is further claimed that said Ordinance No. 39551 is unconstitutional and discriminatory in that it provides that it shall be unlawful for any person engaged in the described business to cause any vehicle owned or operated by him to remain upon any railroad depot grounds or premises in said city while awaiting employment, except such person have the written consent of the owners, etc., of such depot

grounds, etc., and further provides that it shall be unlawful for any person to solicit custom or patronage of transferring persons or property or baggage in or upon any railroad train, etc., excepting persons having written consent of the owners, etc., of such railroad trains, etc., and is further discriminatory in that it confers the right upon owners, etc., of railroad trains, etc., to confer upon certain favored taxicab companies or individuals the exclusive privilege of entering upon such railroad trains, etc., and discriminates against independent taxicab men, etc., and in favor of those persons having such written consent of the owners.

[1] The legislative body, presumably upon a sufficient investigation and knowledge of the situation existing, has determined that facts existed constituting an emergency, such that the peace and safety of the community, and particularly the traveling public, required that appropriate legislation be immediately enacted. The facts recited in the ordinance are facts which reasonably might be held to constitute such emergency. This being so, the courts will not, in a proceeding like that now before this court, undertake to investigate the truth of the statement of facts as set forth in the ordinance and substitute their decision for that of the city council. [2] We are here concerned only with the jurisdiction of the police court, whose authority is challenged on the ground that the facts charged in the complaint against petitioner did not, at the time of their occurrence, constitute a public offense. [3] While it has been held that the mere declaration of the council that the ordinance is passed for the immediate preservation of the public health, peace, and safety is neither conclusive nor yet sufficient, it was further pointed out that "the nature of the ordinance itself will, in most instances, be determinative, and where a sudden emergency has arisen, a statement of the nature of the urgency finds proper place to support the declaration." (*In re Hoffman*, 155 Cal. 114, [132 Am. St. Rep. 75, 99 Pac. 517].)

[4] It may be conceded that, ordinarily, when an ordinance which has been suspended by a referendum has been repealed by the council, the council cannot enact another ordinance in all essential features like the repealed ordinance; although, even then, if there is an emergency involving the immediate safety of the public welfare, and the coun-

cil has inadvertently failed to declare such emergency in passing the ordinance, it may be that this oversight can be remedied forthwith by repeal and re-enactment in proper form, notwithstanding the filing of a referendum petition. The council may, however, deal further with the subject matter of the suspended ordinance, by enacting an ordinance essentially different from the ordinance protested against, avoiding, perhaps, the objections made to the first ordinance. If this be done, not in bad faith, and not with intent to evade the effect of the referendum petition, the second ordinance should not be held invalid for this cause. (Note, L. R. A. 1917B, p. 26; citing *Re Megnella*, 133 Minn. 98, [157 N. W. 991].) We have compared the two ordinances, Nos. 39551 and 39385, which are set out as exhibits annexed to the petition herein. Without making the comparative quotations, which would unduly extend this opinion, we are content to say that the two ordinances differ from each other, not merely in phraseology, but in substance relating to items of importance. Therefore, the assertion of petitioner that the last ordinance was, in all essential features and provisions, similar to the former, and that the last ordinance was enacted in bad faith and with intent to evade the effect of the referendum petition, is not sustained by the record.

[5] We think that the terms of the ordinance do not create any unlawful discrimination between persons who have, and others who have not, written consent of the owners of depots and depot grounds, to maintain booths, or keep vehicles standing upon such depot property. In the case of *In re Barmore*, 174 Cal. 286, [163 Pac. 50], the supreme court upheld the validity of an ordinance of the city of Los Angeles which wholly prohibited soliciting of patronage for transportation of passengers or goods in certain public places, including railroad stations. Having the power to prohibit, the city has equally power to regulate and restrict the conduct of such business when permitted. In so regulating traffic on such premises, it is only necessary that the prescribed rules and restrictions be reasonably adapted to promote the welfare of the traveling public. Now, it is common experience, and nothing is suggested to the contrary, that the convenience of passengers arriving at transportation stations is promoted, and their business facilitated, by having a single agency at hand to which they

can apply for service; whereas, competitive solicitation of such business has been found to be a cause of much disorder and inconvenience. In passing the ordinance, the provisions of which are attacked by petitioner in this proceeding, the city council made a regulation which seems to be reasonable and well adapted to the end in view. A person engaged in the business of carrying passengers and baggage from public transportation depots has not, in that capacity and in the absence of any contract right, a vested right to solicit business on such depot premises. This being so, the prohibition of such solicitation without written consent of the owner of the premises, while there is no prohibition to those who have such consent, is not an arbitrary and unlawful discrimination. The advantage given to the favored person (if any such there be) is only incidental to the regulation, which is enacted for the convenience and safety of travelers, and not for the purpose of discriminating between persons equally entitled to transact such business on premises devoted to public transportation business.

The writ is discharged, and the said George U. Stratham is remanded to custody.

Shaw, J., and James, J., concurred.