## Eagle et al. v. City of Corbin et al.

(Decided Dec. 13, 1938.)

(As Modified Dec. 22, 1938.)

THOS. F. YOUNG for appellants.

M. A. GRAY, J. W. CAMMACK, SR. and T. A. PERRY for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming in part and reversing in part.

For the purpose of reconstructing, enlarging and improving its combined electric light and water plant, Corbin, a city of the third class, proposed to issue 3½% bonds for $220,000, payable out of the plant's revenues. A federal grant of approximately $180,000 has been made to supplement that amount, thus providing $400,-

000 for the extensive project. Taxpayers have challenged the authority of the City to issue the bonds upon several grounds, but the circuit court has held the action to be authorized and the proposed bonds to be valid. The question is before this court on appeal.

The City has owned and operated the plant as a unit for about 25 years. It has yielded net revenue of $50,000 or more annually, which has gone into the general fund of the city. By reason of obsolescence and depreciation of the plant, on the one hand, and substantial increases in the population of the city and demands for the services, on the other, it is made to appear that the present facilities are very inadequate and that rehabilitation and extensions are necessary. Reciting this necessity, an ordinance adopted August 6, 1938, directs such reconstruction and improvements according to plans and specifications theretofore approved and ratifies and confirms the sale of bonds theretofore agreed upon, and then authorizes the issuance of the bonds and makes appropriate provisions for their liquidation. It is expressly provided that these bonds and the interest thereon shall be paid out of the revenues of the system, and a certain sum is specifically set apart to be paid in equal monthly installments into a sinking fund. The ordinance declares that the bonds shall constitute a valid claim against that fund, and "the revenues of the water and electric light and power system of said city pledged to such fund." It further commits the city to collect for the services sufficient rates to yield the necessary amount to care for the sinking fund as therein established and necessary operating, maintenance and depreciation charges. One of the covenants of the bonds themselves is that the rates for the services will be "fixed, collected, and accounted for" sufficient to pay the bonds and interest promptly. It is further provided that the city "hereby irrevocably covenants, binds and obligates itself not to sell, lease, mortgage or in any manner dispose of the said system, including any extensions or additions which may be made thereto, until all the bonds issued hereunder have been paid in full, both principal and interest, or unless and until full and satisfactory provision shall have been made and funds set aside sufficient" therefor. These are some of the provisions of the ordinance which seem most pertinent in the consideration of the case.

Of the total amount proposed to be expended 75%

is for the rehabilitation of the electric light and power facilities and the balance for the water works.

As stated in Juett v. Town of Williamstown, 248 Ky. 235, 58 S. W. (2d) 411, 413:

"Municipal corporations possess only such powers as are expressly given, or necessarily implied, in statutes constitutionally enacted, and, if there be a fair and reasonable doubt of the existence of the power, it should be resolved against the municipality."

The General Assembly from time to time has granted powers to the cities of Kentucky in relation to several kinds of public services, particularly the furnishing of pure water and electric energy. The method of paying for such facilities, either in the purchase or erection of the plants or the substantial extension and improvement thereof, by the issuance and sale of bonds payable out of the revenues, generally referred to as revenue bonds, is of rcent origin or development. An interesting article on the subject by Hon. George W. Meuth appears in 25 Kentucky Law Journal, 230. Unless express authority may be found in the statutes for the proposed plan and bonds they and the method of caring for them must be declared invalid.

Sections 2741L-1 et seq. of the Statutes (being an act of 1926, amended in 1932, 1936, and 1938) authorize as an alternate method all cities, except those of the first class, to borrow money and issue bonds for the acquisition or extension, addition or improvement of water works and sewerage systems, which bonds are payable out of the revenues. Sections 2741L-23 et seq. of the Statutes (being an act of 1930, c. 92) are substantially the same as to water works. Cf. Williams v. City of Raceland, 245 Ky. 212, 53 S. W. (2d) 370.

Sections 3480d-1 et seq. of the Statutes (being an act of 1932, c. 119, as amended in 1936, c. 77) establish a like financial scheme for electric light, heat and power plants for all cities other than the first class. Prior to the 1936 amendment, this statute related only to cities of the third class. In its essential operation it was about the same as the foregoing statute, Secs. 2741L-1 et seq., covering water works and sewerage systems. But the amendment of 1936 carried a proviso that before any such city shall be authorized or empow-

ered to acquire and operate an electric plant or to issue revenue bonds therefor, the proposition must be submitted in a prescribed way and approved by a majority of the voters in a referendum election. No such or any referendum was held in this case.

The circuit court found authority to finance the rehabilitation of the facilities in Sections 3284 and 3290-5, of the Statutes, which vest power in cities of the third class to provide their inhabitants with water and light. But this power in so far as it authorized the burdening of such facilities or their income was made conditional upon the approval of two-thirds of the voters of such city by an act of 1910, which is Section 3290a-1, of the Statutes. However, since the rendition of the judgment it has been found that the proviso of the amendment of 1936 (ch. 77, Acts of 1936) to the 1932 Act (Section 3480d-1 et seq., Statutes), conditioning the authority to issue revenue bonds to finance the acquisition or extension of electric light and power plants, is unconstitutional because not embraced in the title of the act, contrary to the provisions of Section 51 of the Constitution. Booth v. City of Owensboro, 275 Ky. 491, 122 S. W. (2d) 118. There was no such limitation attempted to be put upon the authority to issue water works revenue bonds. Section 2741L-1 et seq., Statutes. Although there are two statutes, one relating to electric plants and the other to water works, since the authority and procedure are the same, we see no reason why such bonds should not be issued for a unified plant if both statutes have been observed. Hence, unless a ground of attack upon the validity of this venture other than the failure to obtain the assent of the voters of the city should be sustained, it must be held good.

It is argued that since the city is heavily in debt and the revenue from the operation of these plants has been and will be needed to carry on the municipal functions, the diversion of the revenue to the payment of these bonds may not be approved by the courts. This is a matter within the discretion of the city governmental authorities.

Section 3480d-20 of the Statutes, which is a part of the Act of 1932 creating the alternate method of financing the acquisition and extension of municipal electric plants, provides that:

"Any city acquiring or constructing an electric

light, heat and power plant * * * under the provisions of this act, shall, by ordinance, appoint three commissioners to operate, manage and control said plant, to be known as the City Utility Commission."

It is given "absolute and exclusive control" of such plant, its operation and fiscal management. The qualification and duties of its members are set forth with particularity, to the end that the commission shall be composed of interested citizens and taxpayers, not political, and entirely independent of the city government. No such commission has been appointed in Corbin. Though the language of the statute is that such commission is required where a utility has been acquired by the method created by the act, and the Corbin electric plant was not so acquired, for it has been owned by the city for about 25 years, we are of opinion, nevertheless, that where revenue bonds have been issued according to the scheme for adding to and extending an existing utility plant, this statute and mode of management are applicable. If that were not so, then section 16 of the Act, Section 3480d-16, Statutes, would also be inapplicable for financing additions and betterments of a plant acquired in some other way and these revenue bonds could not be issued at all. The similar section in the statute pertaining to water works, Section 2741L-16 et seq., has been held applicable to the existing water works. City of Bowling Green v. Kirby, 220 Ky. 839, 295 S. W. 1004.

It is to be observed, however, that the establishment of such city utilities commission is not made a condition precedent to the issuance of the bonds. Omitting to name a commission does not prevent the exercise of the power vested in the city governmental authority in this connection or invalidate the bonds. The intent of the statute, we think, was to obtain a non-political and business management of the plant in order to protect the bond holders and the inhabitants as well. The court should not assume that the law will not be complied with by the city commissioners. On the contrary, we assume that such a commission will be appointed at the proper time. If it should not be, then an interested party has recourse to the processes of the courts.

The contention that the ordinance does not conform to the terms of Section 3480d-9, Statutes, is without

foundation. That section requires that such ordinance "shall definitely fix and determine the amount of revenue which shall be necessary and be so set aside and applied to the payment of the principal and interest of the bonds, and the proportion of the balance of such income and revenues which is to be set aside as a proper and adequate depreciation account, and the remaining proportion of such balance shall be set aside for the reasonable and proper operation and maintenance thereof." This ordinance definitely sets aside a specific sum for each year as an inviolate sinking fund for the payment of the bonds with interest. The ordinance does not specify what fractional proportion of the balance of the revenue shall be set aside for operation or for depreciation, but it requires that "a sufficient and reasonable portion of the balance of the income," after the payment into the sinking fund, "shall be set aside and used for the proper operation and maintenance" of the system. In the same language it is declared that enough of the revenue shall be set aside in a "depreciation fund and shall be expended in making good any depreciation in said system and in paying for the cost of any extensions, additions or improvements." It is provided that any accumulations in that fund may be invested and the fund and such increase shall be used for no other purpose. Since the terms of the bonds and the statute, as well, require that the city shall charge rates for the service sufficient to carry the entire financial plan, we think the ordinance meets the requirements of the law.

Two years before this venture was entered upon the city had proposed, by the adoption of proper ordinances, to issue $85,000 of revenue bonds for the improvement and extension of its utility system. The ordinance, adopted August 25, 1936, was numbered 1396. There were two supplemental ordinances to complete the arrangements and contract for the sale of the bonds. Under the provisions of Sections 3480b-23 and 3480b-25, petitions signed by the requisite number of voters were filed with the city commissioners requiring a referendum as to whether those ordinances should go into effect. Nothing further was done either towards having the election or carrying out the ordinances. The reason therefor, according to the evidence of the city, was that the consulting engineers advised that the proposed expenditure would be so ineffectual to accomplish the purposes and meet the needs as to be wasteful; and also, as

we understand, that the benevolent federal agency which was expected to make a donation of a similar or larger sum disapproved the project. The ordinance adopted August 6, 1938, which is that involved in this case, expressly repealed all conflicting ordinances, which, obviously, embraced the former one. Nevertheless, it is maintained by the appellants, who oppose the issuance of these bonds, that the referendum petitions filed in relation to the other ordinances cannot be ignored or evaded or be nullified by the enactment of an ordinance in all essentials the same. Such is unquestionably the law in principle. But the city legislative body is not prevented from legislating on the subject matter of an abandoned or dead ordinance if it acts in good faith. Ginsberg v. Kentucky Utilities Co., 260 Ky. 60, 83 S. W. (2d) 497; 43 C. J. 594. In this instance two years had elapsed. While the object of the new legislation was the same, and even the method of financing, yet it is made to appear that it is an entirely new plan of reconstruction and rehabilitation proposed, with two and one-half times as much money involved. As far as this record discloses, the referendum petitions to the old ordinances may have been filed in opposition to the proposed plan for the same reason that it was disapproved by the engineers and the federal governmental agency. There was no referendum petition filed to the present ordinance, and we think its enactment was authorized and it became final.

The ordinance recites that the proposed bonds had been sold by an agreement entered into between the city and a named purchaser on July 11, 1938, and undertakes to ratify and confirm that contract and sale and to authorize the delivery of the bonds to that purchaser upon payment therefor in accordance with the terms of sale. It was entered into fifteen days before the ordinance was introduced and nearly a month before it was adopted. It is beyond the power of a municipality to contract to sell or dispose of bonds before they come into existence, or, at least, before they are authorized. Hansard v. Green, 54 Wash. 161, 103 P. 40, 24 L. R. A., N. S., 1273, 132 Am. St. Rep. 1107; 44 C. J. 1214. The explanation of this transaction is that the named purchaser was the only bidder of par for similar bonds when it was proposed to issue them two years before. The conditions had materially changed. Bids offered then upon a proposition subsequently abandoned and re-

pealed were certainly not bids offered for this one. It is true that a city may ratify a contract defectively made when it had power to make it properly in the first instance. Masonic Widows' & Orphans' Home v. City of Corbin, 229 Ky. 375, 17 S. W. (2d) 215. But a contract entered into without authority of a statute or opposed to the principles of public policy may not be ratified. Fabric Fire Hose Co. v. City of Louisa, 253 Ky. 407, 69 S. W. (2d) 726. Sections 2741L-5 and 3480d-5 authorize the sale of bonds under each act, "in such manner and upon such terms as the common council or board of commissioners shall deem for the best interests of such city." Throughout the constitution and statutes pertaining to municipal corporations of every kind is the principle or policy of disposing of public franchises, of selling public property and of spending public money by competitive bidding after reasonable advertisement and opportunity for anyone to submit appropriate offers. Any contract of a city of the third class for work or supplies or rendition of service to the city must be let by the council or commissioners on advertisement and competitive bidding where over $500 is involved. Sections 3440, 3480b-2, Kentucky Statutes; Moseley Hospital v. Hall, 207 Ky. 644, 269 S. W. 1004. The failure to give opportunity to others to bid upon proposed bonds, and the making of a private sale before they had been authorized, could not be ratified by the city commissioners.

It is made to appear that the court has previously approved the issuance of similar bonds without there having been public competitive bidding or an opportunity therefor afforded, and perhaps the validity declared of contracts of sale of such bonds even before the ordinances creating them were passed. Very substantial rights have vested under those decisions. In some instances the bonds have been placed in the hands of the public and their proceeds expended in whole or in part. In others the contracts have been made but there has been no actual delivery of the bonds or payment of the money made. These conditions have resulted from a tacit construction by this Court that the provisions of sections 2741L-5, 2741L-27 and 3480d-5, of the Statutes, authorizing the city council or commissioners to sell such bonds "in such manner and upon such terms" as it "shall deem for the best interests" of the city, are complete in themselves and grant unrestricted powers.

However, in most of the cases, if not all of them, the records disclosed that the public authorities had submitted proposals to two or more prospective buyers of the bonds, and having informed themselves as to the market for different classes of bonds, proceeded to authorize the issuance of the class most favorable to the city. The case at bar is the first to which our attention has been called wherein but one buyer was approached. It is familiar law that, first the Constitution, and second, the Acts of the legislature are deemed to declare the public policy of a state. In the absence of such declaration, the court does so. As above stated, there are broad constitutional and statutory declarations as to public policy in respect to similar municipal transactions, namely, that public business is never a private matter. This case, and the facts disclosed in relation to the bonds under attack, as above stated, indicate a private sale of public obligations, and a procedure fraught with grave danger to the public interests and welfare. The case quite forcefully presents to the court the need for speaking specifically upon the construction to be given the provisions of the statutes above cited. We think they are to be construed as granting broad discretionary powers to the city councils or commissioners in the creation and sale of such bonds, but not to the extent of avoiding public and reasonable advertisement or a proposal to receive bids or offers for bonds proposed to be issued and sold.

In view of the tacit or implied construction of the statute heretofore given, we expressly hold that bonds heretofore issued, and contracts heretofore entered into, or projects now in course of prosecution are not affected by this decision. The declarations herein are to be deemed as applying to any projects hereafter initiated and to the construction or interpretation to be given the statutes and powers of municipalities in the future.

Since the judgment appealed from had the effect of approving the sale of the bonds, it must be reversed to that extent. In all other respects it is affirmed.

Judgment affirmed in part and reversed in part.