# Selle et al. v. City of Henderson.

March 8, 1949.

C. W. Grafton and Wyatt, Grafton & Grafton for appellants.

George S. Clay for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

.. The action was instituted by appellee City of Henderson, a third class city operating under the commission form of government, against appellant Edwin C. Selle in his capacity as a citizen, taxpayer, and customer of electric light and power distributed by the municipally owned electric light and power system, and also as a representative of all citizens, taxpayers, and customers of the electric light and power system. To support the suit against appellant as representative of a class, appellee alleged that the questions involved were of a common and general interest to all of the persons classified and that such persons were so numerous as to render it impracticable to bring all before the Court within a reasonable time. Summons was duly served on appellant more than ten days prior to the commencement of the January 1949 term of the Henderson Circuit Court. The action was placed on the equity docket which was called on the third day of the term, at which time appellee moved the Court that appellant be designated by order of Court to represent all of the citizens, taxpayers, and consumers of the electric light and power system. Appellant manifested to the Court that he was willing to

assume the responsibilities of class representative, whereupon the Court sustained the motion and designated him as the representative. Appellant denied the allegations of the petition for want of sufficient information to form a belief that they were true. He pleaded an affirmative defense which hereinafter will be discussed and prayed for an injunction to prevent appellee from issuing the Electric Light and Power Revenue Bonds, to validate which the action was instituted. Evidence was taken to sustain the allegations of the petition and the case was submitted to the Court on the pleadings, evidence, and exhibits. Thereupon the Court entered judgment approving and validating the bond issue. The case is before us for final determination in respect to the correctness of the judgment of the Chancellor.

For many years the City of Henderson, in a proprietary capacity, has owned and operated an electric light and power system furnishing electricity for domestic, commercial, and industrial purposes to the inhabitants of the City, on a revenue producing basis. The operating equipment of the plant is old, obsolete, and almost worn out. In the past ten years the population of the City has doubled, and twenty-one new industries have located therein. By reason of this growth, the demand for electric light and power has increased materially. Several years ago the capacity of the generating plant reached its peak and additional electricity was obtained from a line connected with the electric system of the Kentucky Utilities Company. This source of supply soon was exhausted, and it became apparent that the City would either have to rehabilitate its generating plant, add new machinery to it, or build a new one. In the year 1945, the then Board of Commissioners of the City employed Black and Veatch of Kansas City, Missouri, as consultant engineers to inspect the plant and records of the system, survey the needs of the community, and submit recommendations to increase the capacity of the system. Complying with these directions, the engineers submitted a report recommending construction of an entirely new generating plant under several alternative plans, and estimated the cost of complying with these recommendations at the approximate sum of $2,000,000. The Board of Commissioners then adopted an ordinance providing for the issuance and sale of ''City of Hen-

derson Electric Light and Power Revenue Bonds," in the principal amount of $2,100,000 pursuant to KRS 96.520. The ordinance provided that the principal of the bonds and interest thereon were to be payable solely from the income and revenue derived from the sale of electricity. It further provided that the bonds should be offered for sale and bids received thereon competitive both as to the premium and interest rates. Pursuant to the provisions of KRS 89.230, the ordinance was placed on file one week for public inspection in its completed form between the first reading and final adoption, ten days after which it was to become effective unless a petition for a referendum should be filed within that period as permitted by KRS 89.240. Such a petition with the requisite number of signatures was duly filed requesting the Board of Commissioners either to repeal the ordinance or to submit it to the voters of the City at a regular election so that the voters might determine by a majority vote whether the ordinance should go into effect or be repealed. Declining to repeal the ordinance, the Board of Commissioners submitted the question to the voters of the City at the regular election held November 4, 1947. A majority of the voters directed that the ordinance be repealed. Opposition to the bond issue was based on the facts: (1) That the engineers had been instructed only to make recommendations for the construction of a new generating plant and that they had not been instructed to survey the whole situation to determine the feasibility or desirability of purchasing electricity from outside sources in lieu of construction of a new plant, and (2) the proposed plans offered no relief for the overloaded condition and inadequate supply of electricity during the approximate two and one-half year period required to construct a new plant.

The Board of Commissioners is composed of the Mayor, elected for a four-year term, and two Commissioners, elected for two-year terms. The Mayor serving in the year 1946 held over, but new Commissioners defeated the then incumbent Commissioners in a campaign, the major issue of which was the question of the adoption or the repeal of the ordinance we have been referring to. After taking office, the newly constituted Board of Commissioners employed Burns and McDonnell, consultant engineers of Kansas City, Missouri, to make a

survey of the entire electric situation in the City of Henderson, including the feasibility and desirability of purchasing electric current from outside sources in lieu of generating it, and to report on and make recommendations in respect to a plan to afford relief for the already overtaxed plant during the period required to rehabilitate or enlarge the then existing plant or to construct a new one. The Burns and McDonnell report recommended the construction of a new plant but disagreed with the Black and Veatch report in respect to the construction of a cooling system for circulating water. The Burns and McDonnell report recommended a "river intake" whilst Black and Veatch had recommended the construction of a "cooling tower." The "cooling tower" plan would cost approximately $325,000 less than the "river intake" plan. Other differences were in respect to standby equipment; Burns and McDonnell recommended the installation of Diesel generators to provide an immediate source of additional power, whilst Black and Veatch made no inspection of, or report on, this phase of the project. The Board of Commissioners were satisfied with the findings of Burns and McDonnell and in the spring of 1948 adopted an ordinance providing for the issuance and sale of revenue bonds to provide funds for the purchase and installation of the Diesel equipment for immediate use. No referendum was asked on this ordinance which provided for bonds in the approximate amount of $450,000, but only $405,000 of which were required to be issued to make the improvement contemplated. No further step was taken in respect to the recommendations of the engineers until October, 1948, when a petition was presented to the Board of Commissioners, containing the required number of signatures, requesting the Board to adopt an ordinance incorporated in the petition and which provided for the issuance and sale of "City of Henderson Electric Light and Power Revenue Bonds" in the principal sum of $3,-000,000 to provide for the construction of a new power plant as recommended by Burns and McDonnell and to refund the $405,000 of bonds outstanding. On advice of counsel, the Board of Commissioners entertained a doubt as to their legal right to adopt such an ordinance in view of the defeat of the similar, though not identical, plan voted down at the 1947 regular election. Accordingly, the Board of Commissioners refused to adopt the ordinance

but directed the initiative ordinance to be submitted to the voters of the City at the regular election to be held on November 2, 1948, at which time it was approved by a majority of votes cast on the question. The ordinance authorizing the vote to be had on the initiative ordinance directed that, in the event it should be approved by a majority vote, an action should be instituted by the City for the purpose of obtaining a determination of such legal questions as might be presented in opposition to the validity of the ordinance in the event that no such action should be filed by a citizen or taxpayer of the City. The Board of Commissioners waited seven weeks before instituting this suit in order to allow any disappointed citizen time in which to bring the action himself.

Appellant is represented in this action by attorneys employed by prospective purchasers of bonds herein authorized by the Chancellor to be issued and sold. The questions presented by the record are:

(1) Under the provisions of KRS 89.250, may voters, equal in number to at least twenty-five per centum of the total number of votes cast for both candidates for mayor at the last preceding election for mayor, initate and cause to be adopted an ordinance in many respects similar to, but not identical with, an ordinance which by referendum was submitted to and rejected by the voters one year earlier? (2) What constitutes reasonable notice of an election in the absence of statutory direction? (3) Do the inhibitions of sections 157 and 158 of the Constitution apply to the issuance and sale of revenue bonds? (4) Does this record disclose a bona fide controversy between appellant and appellee? (5) Does the record disclose facts calling for class representation? (6) Is the judgment herein binding on all citizens, taxpayers, and consumers of electricity in the City of Henderson in esse and in futuro?

In Ginsberg v. Kentucky Utilities Company, 260 Ky. 60, 83 S.W.2d 497, this Court held that where a petition for a referendum on an ordinance passed by the legislative body of a city was presented and the ordinance was repealed by a majority of persons voting on the question, the legislative body of the City thereafter may not pass the same ordinance or one identical with it in all essential features, and thereby thwart the will

of the people as expressed at the polls; but the legislative body may legislate on the same subject matter, provided it does so in good faith, without purpose of evading the result of the referendum, and provided further, that the new ordinance differs from the old in some of its essential features. In that case the Board of Commissioners of the City of Middlesboro passed an ordinance, and a petition, signed by the required number of voters, was filed with the Board protesting the passage of the ordinance and requesting that it either be repealed or submitted by referendum to the voters of the city. The Board of Commissioners did neither, with the result that a suit was brought to enjoin any action pursuant to the ordinance. The injunction was granted by a Judge of this Court. Kentucky Utitilites Co. et al. v. Ginsberg et al., 255 Ky. 148, 72 S.W.2d 738. Thereafter the Board of Commissioners repealed the ordinance and adopted a new one attempting to achieve the same result but eliminating the features complained of in the injunction suit. Thereupon another action was filed in which the plaintiff contended that by passing the second ordinance the members of the Board of Commissioners violated the injunction and rendered themselves amenable to process for contempt of Court. The Chancellor of the Bell Circuit Court held the members of the Board to be in contempt, but on appeal to this Court the judgment of conviction was reversed on the ground that the second ordinance differed in essential features with the first and that it was adopted in good faith, since it eliminated all of the objectionable and invalid provisions of the first ordinance as they had been pointed out in the opinion granting the injunction. The facts of that case differ with the facts of this in that the second ordinance was initiated by the Board of Commissioners, whereas here the second ordinance was initiated by the requisite number of voters provided for in KRS 89.250. The ordinance under question in this case attempted to, and so far as we have been able to ascertain did, meet the objections raised by the opponents of the passage of the first ordinance in at least three essential particulars; and the good faith of the Board of Commissioners conclusively is demonstrated by the showing that they refused to pass the ordinance at the request or demand of less than a majority of the voters as recorded at the

polls at the next general election held in the city. Therefore we are of the opinion that the unfavorable vote recorded at the November, 1947 election did not preclude the adoption of the ordinance initiated under the provisions of KRS 89.250.

The failure of the Legislature to direct the manner for giving notice that an election is to be held either on a petition protesting the passage of an ordinance or one initiating its passage does not provide a basis for a judicial declaration that no notice of any kind must be given. Mollette v. Board of Education of Van Lear Graded District, 260 Ky. 737, 86 S.W.2d 990. On the contrary, we are of the opinion that reasonable notice must be given to the voters that the election is to be held. KRS 89.030 Sub section (5) prescribes the nature and extent of the notice which shall be given in connection with an election to be held for the purpose of determining whether a city shall adopt the commission form of government. It provides ''The sheriff or other officer shall have the order published in some weekly or daily newspaper published or circulated in the county for at least two weeks before the election, and also advertise the order by handbills posted in conspicuous places in the city, for the same length of time.'' We are of the opinion that the requirements of a notice of an election in respect to initiative or referendum legislation should not be declared by the Courts to be more stringent than the notice prescribed by legislative edict in respect to elections to be held to determine whether a city should change its entire form of government. Hand bills were posted in fifty conspicuous places throughout the city to advise the voters that the election would be held. In addition thereto, the election was advertised in the official newspaper in the City of Henderson in each of the issues commencing the 17th day before the election to and including the day of the election. But it is suggested by counsel for appellant that the newspaper does not publish an issue on Monday and that the notice appeared in only fourteen issues of the paper. We are of the opinion that this fact is not material and that the notice given was reasonable in the circumstances of this case. Bryant v. Lang, 197 Ky. 480, 247 S.W. 756.

The third question has consistently been answered

in the negative by this Court in many cases, some of which are City of Bowling Green v. Kirby, 220 Ky. 839, 295 S.W. 1004, in which water revenue bonds were involved; Wheeler v. Board of Commissioners of City of Hopkinsville, 245 Ky. 388, 53 S.W.2d 740 (sewer revenue bonds); Davis v. Board of Education of City of Newport, 260 Ky. 294, 83 S.W.2d 34 (school building revenue bonds); Cawood v. Coleman, etc., 294 Ky. 858, 172 S.W.2d 548 (combined electric and water revenue bonds); Reconstruction Finance Corporation v. City of Richmond, 249 Ky. 787, 61 S.W.2d 631 (gas revenue bonds); Klein v. City of Louisville, 224 Ky. 624, 6 S.W. 2d 1104 (bridge revenue bonds), and McKinney v. City of Owensboro, 305 Ky. 253, 203 S.W.2d 24, involving combined auditorium field house and swimming pool revenue bonds. We cling to our former decisions that the inhibitions of sections 157 and 158 of the Constitution are not applicable to Revenue Bonds.

Counsel for appellant suggests that since they represent prospective bondholders, the case may be termed a friendly suit, and being a friendly suit, the Court might be of the opinion that a real controversy does not exist between the parties and that both sides might desire a declaration upholding the validity of the bonds. It seems to us that this suit has been practiced with all the care that could have been given it by attorneys, not only antagonistic in purpose but antagonistic in person as well. It appears counsel for appellant have raised every question which would throw any light on the subject presented for our determination, and in their brief they have explained their reasons for not presenting other questions which have been presented in other cases and decided in favor of the validity of bonds: such as the validity of competitive bidding to establish interest rates which was upheld in Funk v. Town of Strathmoor Village, 278 Ky. 627, 129 S.W.2d 151, and the right of a City to select a defendant and to request the Court to direct him to defend the action for the benefit of a class, Henderson v. Gem of Kentucky Lodge 1519, etc., 290 Ky. 709, 162 S.W.2d 539. They additionally have pointed out in their brief that the sale of the bonds herein sought to be validated has been proposed in pursuance of the rule announced by this Court in Eagle v. City of Corbin, 275 Ky. 808, 122 S.W.2d 798. The controversy in this case

has been generated amicably, but certainly, to prevent injury to prospective purchasers of the bonds. The City of Henderson desires the Court's approval of the bonds before it offers them for sale, and prospective bondholders are desirous of the assurance that their investments will have the sanction of the Courts before making them. Certainly the first question raised is one concerning which reasonable minds may differ and may be calculated to create a reasonable doubt as to the validity of the bond issue. Such doubt in the mind of a litigant is sufficient to establish the existence of a controversy and to support a request for a declaration of rights under the Declaratory Judgment Act, sections 639a—1 to 639a—12 inclusive, of the Civil Code of Practice.

We think the record is replete with facts which call for class representation. Appellant is Secretary and Trust Officer of the Ohio Valley Trust Company of Henderson, and neither he nor the institution for which he works is connected in any way with the City Administration, nor at this time do they have any interest in the bonds in question. He has the same interests as any and all other citizens, taxpayers, and consumers of electricity, and any failure on his part to raise a question affecting their interests would have the same effect on his own interests. We will take judicial knowledge of the fact that the citizens, taxpayers, and consumers of electricity of a third class city (and Henderson is one of the largest third class cities in the Commonwealth) are far too numerous to require appellee to bring each and every one of them before the Court by personal process. The shifting of population and numerous births and deaths would complicate the procedure to such an extent that it would be impossible ever to obtain judgment if each member of the class personally were required to be made defendant in the suit. As we have already observed, the record in this case discloses that it is free of collusion. Appellant has discharged his duty in admirable fashion by making a diligent and good faith investigation and requiring appellee to introduce proof as to all matters beyond his particular knowledge, and a reading of the briefs in the case discloses that counsel have withheld nothing material to the issue. So we hold that the judgment validating the bonds is without error and is binding on all citizens, taxpayers, and consumers

of electricity in the City of Henderson in esse and in futuro.

The judgment is affirmed.