John R. BIRD

v.

TOWN OF OLD ORCHARD BEACH,
et al.

Supreme Judicial Court of Maine.

Argued Sept. 11, 1980.

Decided Feb. 27, 1981.

John R. Bird, pro se (orally).

Bernstein, Shur, Sawyer & Nelson, F. Paul Frinsko (orally), Geoffrey H. Hole, Portland, for defendants.

Before McKUSICK, C. J., GODFREY, ROBERTS and NICHOLS, JJ. and DU-FRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

In this appeal John R. Bird, the plaintiff-appellant, seeks reversal of the summary judgment entered in the Superior Court, York County, for the defendant-appellee Town of Old Orchard Beach, the members of the Town Council and the Treasurer of the Town. We affirm the judgment.

On September 15, 1977, the Old Orchard Beach Town Council passed a resolve authorizing the issuance of general obligation securities of the Town of Old Orchard Beach in a total principal amount not to exceed Four Hundred Thousand Dollars ($400,000.00) for the purpose of implementing a capital improvement program. Pursuant to a provision of the town charter, certain Old Orchard Beach residents filed with the Town Clerk a petition signed by the required number of the town's registered voters requesting submission of the foregoing resolve to a referendum vote. At a special town election held on December

12, 1977, the voters of the Town of Old Orchard Beach voted against the bond issue.

On December 28, 1977, the Town Council, by unanimous vote and without significant discussion, passed a second resolve authorizing a bond issue to implement the identical capital improvement project in the total principal amount not to exceed Three Hundred and Ninety-Two Thousand Dollars ($392,000.00). The present appellant brought suit to enjoin the issuance of the bonds under the second resolve, but, before court adjudication of the matter, the Town Council at a special council meeting held on January 10, 1979, voted to rescind the December 28, 1977 resolve and to authorize a third bond issue in the total principal amount not to exceed Three Hundred and Ninety Thousand Dollars ($390,000.00). Again, the vote on the third resolve was unanimous and minimal debate took place.

On January 31, 1979 the appellant filed with the Superior Court the present suit to block the third bond issue. He brings his action as a resident, citizen, voter and taxable inhabitant of Old Orchard Beach.[1] In his complaint, Bird sought a declaratory judgment to the effect that the action of the Old Orchard Beach Town Council on January 10, 1979, authorizing a bond issue nearly identical to the bond issue defeated by the voters in the 1977 referendum election, was ultra vires. He also bases his claim for relief on the ground, so he alleged, that the Town Council had made the actual decision on the bond issue in secret "executive" sessions prior to the January 10, 1979 meeting, and, thus, the Town Council's action was in violation of Maine's Freedom of Access Law (1 M.R.S.A. §§ 401–410) and void.

The appellees moved for summary judgment, with supporting memoranda and affidavits, including an affidavit by Town Councilman Clarence L. Roberts, wherein Mr. Roberts stated under oath that, based on personal knowledge, no secret or illegal executive sessions took place as alleged in

1. No question of standing has been raised. *See Cohen v. Ketchum*, Me., 344 A.2d 387 (1975).

Mr. Bird's complaint; that in *fact, no clan-destine* meeting, conference, or meeting held on private property without proper notice and ample opportunity for attendance by the public, took place; that the only meeting that did take place was on January 10, 1979, the minutes of which are attached as Exhibit B, and that at said meeting various members of the public and the press were present. Mr. Bird filed a counter affidavit which was fatally defective for non-compliance with the requirements of Rule 56 of the Maine Rules of Civil Procedure. The Superior Court decided both issues in favor of the appellees and granted their motion for summary judgment. In this, there was no error.

### 1. Council's Power to Authorize Third Bond Issue

■ Summary judgment was appropriate on the issue of the Old Orchard Beach Town Council's power to authorize the third bond issue. Disregarding for the time being the question of the alleged violation of Maine's Freedom of Access Law, the facts surrounding the three bond issues and the referendum election are not in dispute. The motion for summary judgment presented the Superior Court with a question of law, whether the Town Council, on January 10, 1979, had the power to adopt a valid resolve essentially duplicating the previous resolve of September 15, 1977 which had been disapproved by the town's voters in referendum election held on December 12, 1977. Where it is clearly established that no genuine triable issue of any material fact exists and that a party is entitled to a judgment as a matter of law, summary judgment is appropriate. Rule 56(c), M.R.Civ.P.; *Haskell v. Planning Board of Town of Yar-*

mouth, Me., 388 A.2d 100 (1978). When facts before the court so conclusively preclude a party's recovery that the court can conclude, as a matter of law, that only one conclusion of fact is possible, then the use of the summary judgment procedure is proper. *Cardinali v. Planning Board of Lebanon*, Me., 373 A.2d 251, 255 (1977).

■ Initially, we note that municipalities in relation to matters which are local and municipal in character have been granted "home rule" so-called by the Constitution of the State and that, by virtue thereof, they possess broad powers of legislation and administration of their affairs, provided there exists no express or implied prohibition by the Constitution or the general law.[2] The statutory implementation of the constitutional home rule provision so confirms.[3] *See Schwanda v. Bonney*, Me., 418 A.2d 163, 167 (1980). Thus, reading the constitutional and statutory provisions together, we can say that municipalities in local and municipal affairs may exercise any power or function granted them by the State Constitution, the general law or the municipal charter, not otherwise prohibited or denied expressly or by clear implication by the constitution, the general law, or the charter itself.

■ No legislative enactment or constitutional provision denies a municipal corporation acting through its officers the power to reenact ordinances or resolves disapproved in voter referendum. It is necessary, then, to look to the Old Orchard Beach Town Charter itself to determine whether the charter grants the power to reenact such voter-rejected ordinances and resolves or prohibits the same.

2. *Article VIII, Part Second. Municipal Home Rule.*

Section 1. The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character. The Legislature shall prescribe the procedure by which the municipality may so act.

3. *30 M.R.S.A. § 1917. Ordinance, power limited.*

Any municipality may, by the adoption, amendment or repeal of ordinances or bylaws, exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution, general law or charter. No change in the composition, mode of election or terms of office of the legislative body, the mayor or the manager of any municipality may be accomplished by bylaw or ordinance.

Article III, section 12 of the Old Orchard Beach Town Charter provides that the Town Council shall exercise all powers vested in the municipal corporation, "so far as shall conform to the provisions of this Charter."[4] Thus, the Council's power is plenary within the limits fixed by the Charter.

But, the appellant contends that Article VIII of the Charter impliedly limits the power of the Council to reenact ordinances or resolves once rejected by the voters in referendum elections. Section 1 of Article VIII is entitled *"Petition for Overrule of Action of Council,"* and it provides, in relevant part:

> The following shall be subject to overrule by referendum as follows:
>
> \* \* \* \* \* \*
>
> c. Orders or resolves authorizing bond issues of $50,000 or more of capital improvements or capital equipment.
>
> \* \* \* \* \* \*
>
> e. If, within 20 days after the enactment of any such ordinance, order or resolve, a petition signed by not less than 10% of the registered voters of the Town of Old Orchard Beach is filed with the Town Clerk requesting its reference to a referendum, the Council shall call a public hearing to be held within 30 days from the date of filing of such petition with the Town Clerk and shall, within 14 days after said public hearing call a special town election for the purpose of submitting to a referendum vote the question of adopting or repealing such ordinance, order or resolve. Pending action by the voters of the town, the referred ordinance, order or resolve shall be suspended from going

into operation until it has received a vote of the majority of the voters voting on said question.

The above-quoted provision unquestionably "suspended" operation of the first bond issue; the 1977 resolve was referred to town voters, a majority of whom declined to approve it on December 12, 1977. The charter, however, is silent regarding the power or lack of power in the Town Council forever thereafter to enact a new ordinance essentially identical to one "overruled" in a referendum election. If the charter is to be regarded as prohibiting a second valid enactment, there must be something in the nature of the referendum process itself that bars such legislative action.

The appellant supports his contention to the effect that the repassage of the second and third bond issues in the instant case was beyond the power of the Council, by quoting the rule stated in McQuillin on Municipal Corporations, Vol. 5, Rev. Vol. 1969, § 16.53, at page 208, as follows:

> Thus, it has been said that the legislative body has no power to pass the same ordinance again, or an ordinance in all essential features like the one against which the petition protested. This would plainly be to nullify the referendum provisions of the charter. But it is equally clear that the council is not prevented from legislating on the subject matter of the dead ordinance. It doubtless may, if it acts in good faith and with no intent to evade the effect of the referendum petition, pass an ordinance covering the same subject matter that is essentially different from the ordinance protested against, avoiding perhaps the objections made to the first ordinance.[5]

---

4. *Article III, Sec. 12. Council: Corporate Powers.*

The Town, after acceptance of the Charter, shall continue to have the capacity to act through and to be bound by its Town Council, who shall when convened from time to time, as herein provided, exercise exclusively, so far as will conform to the provisions of this Charter, all powers vested in the municipal corporation. *Action* in conformity with all provisions of law now or hereafter applicable to the transaction of Town affairs in town meeting *shall, when taken by any town council in accordance with the provisions of this Charter, have the same force and effect as if such action had been taken in a town meeting open to all voters of the town as organized and conducted before the establishment of manager-town council government.*

5. Cases cited for the rule in three jurisdictions were all cases where the second ordinance or resolve was essentially different from the previ-

We are more impressed by the general rationale developed by the Supreme Court of New Jersey in *Cornell v. Mayor and Council of Borough of Watchung*, 49 N.J. 235, 229 A.2d 630 (1967), as follows:

We find no statutory authority limiting the discretion of the municipal council in passing this ordinance and, unless the Legislature has mandated against such procedures, no bar to the council's action exists. We see no reason to ham-string the discretion of the municipal governing body by imposing a limitation on it not required by explicit statutory or constitutional mandate. The municipal residents have an immediate remedy by way of a petition or protest and an ultimate remedy through the exercise of their voting rights at municipal elections.

*Cornell* was later cited by a New Jersey trial court for the proposition that defeat of a prior ordinance by referendum does not preclude a municipality from enacting thereafter a new ordinance essentially identical with that previously rejected by the voters. *State v. East Shores, Inc.*, 154 N.J. Super. 57, at 68, 380 A.2d 1168, at 1174 (1977). *See City of Mattoon v. Henne*, 372 Ill. 89, 22 N.E.2d 940 (1939). *See also Opinion of the Justices*, Me., 370 A.2d 654 (1977) and *McCaffrey v. Gartley*, Me., 377 A.2d 1367 (1977) respecting the power of the people to repeal acts of the Legislature and vice versa.

In the instant case, no constitutional, statutory or charter provision *explicitly* prohibits the Council from passing anew the identical bond issue which the electorate at a referendum election had rejected. It may be that the members of the Council, in an altruistic endeavor to promote the best interests of the municipality, viewed the prior

defeat of the protested bond issue as an ill-advised decision of the electorate which merited reconsideration. Their analysis of the election may have convinced them that the negative result achieved therein did not represent the sentiment of the majority of the town voters for reasons that do not appear in this record, such as possibly a small turn-out of voters, inclement weather, ill-advised timing, inadequate publicity or post-election comments, plus the fact that almost thirteen months had elapsed since the voters had expressed their opposition to the proposed expenditures.

We do recognize that, if empowered to reenact ordinances, orders or resolves following their rejection by the voters in referendum elections, a municipal council could abuse the power by adopting a repetitive pattern of relegislation to be followed by voter referendum petitions and elections. But the voters have it in their power to remedy such abuse. They may remove offending councilmen at the time they are up for reelection, or perhaps sooner under the recall provisions of the Town Charter (Article IX). They may, pursuant to the Initiative and Referendum provisions of the charter (Article VIII), explicitly limit the powers of the council in reenactment of voter-rejected ordinances, orders or resolves during a stated period of time or otherwise.

Absent some explicit indication in the charter to the contrary, our ruling that the Town Council of the Town of Old Orchard Beach is vested with the power to reenact ordinances, orders and resolves that have been repealed by the voters in referendum elections is consistent with the statutory and charter mandate that the home rule provisions be liberally construed to effectuate their purposes.[6] *See 1426 Woodward*

---

ously rejected one, and, thus, the stated rule did not rise beyond the dignity of a dictum. *See In re Megnella v. Meining*, 133 Minn. 98, 157 N.W. 991 (1916); *In re Statham*, 45 Cal. App. 436, 187 P. 986 (1920); *Gilbert v. Ashley*, 93 Cal.App.2d 414, 209 P.2d 50 (1949); *Ginsberg v. Kentucky Utilities Co.*, 260 Ky. 60, 83 S.W.2d 497 (1935); *Eagle v. City of Corbin*, 275 Ky. 808, 122 S.W.2d 798 (1938); *Selle v. City of*

*Henderson*, 309 Ky. 599, 218 S.W.2d 645 (1949). *But see Smith v. Livingston County*, 195 Ky. 382, 242 S.W. 612 (1922).

**6.** *30 M.R.S.A. § 1920. Liberal construction.*

This chapter, being necessary for the welfare of the municipalities and their inhabitants, shall be liberally construed to effect the purposes thereof.

*Avenue Corporation v. Wolff*, 312 Mich. 352, 20 N.W.2d 217, 222 (1945).

In an analogous situation, this Court, in *Dobbs v. Maine Sch. Administrative Dist.*, Me., 419 A.2d 1024 (1980), ruled that the directors of the reference school administrative district had the independent authority to resubmit identical bond issues for school construction to a second referendum vote after their defeat in a first referendum, and that, absent some explicit indication to the contrary, no limitation on the broad powers granted to the school district's directors in the exercise of judgment as to when the district voters should have an opportunity to consider or reconsider any of the major policy matters committed to popular vote will be read into the legislative grant of authority by negative implication.

■ Hence, in light of the fact that under the provisions of Maine's Home Rule legislation applicable to all municipalities the registered voters of the Town of Old Orchard Beach are empowered to amend the charter of the town and, thus, may by proper amendment limit or remove expressly the power of the Town Council to reenact ordinances, orders or resolves rejected by voters at referendum elections, we decline to read into the charter, and infer from the mere existence of the voters' initiative and/or referendum power, the negative implication of a limitation of power on the municipal governing body, as contended for by the appellant in these proceedings.

Empowered as it was to do so, the Council decided to reenact the reference resolve which had been defeated by the voters in referendum election almost thirteen months previously. Even if there might exist a genuine dispute as to the motivations of the councilmen in the repassage of the bond issue, their motives underlying their action were not material in the instant litigation. *See Dobbs v. Maine Sch. Administrative Dist., supra,* at 1029.

## 2. Alleged Violation of Maine's Freedom of Access Law

■ If the Town Council of Old Orchard Beach perfunctorily enacted the January 10, 1979 resolve in open session, but had conducted the deliberations and reached their decision thereon in secret executive sessions prior thereto, the Council's action would be illegal and subject to court order nullifying the same. 1 M.R.S.A. § 405(1)(2)(6) and § 409(2)(3).[7] Mr. Bird's

### TOWN CHARTER OF OLD ORCHARD BEACH
#### ARTICLE I. GRANT OF POWERS TO THE TOWN

Sec. 2. *Powers of the Town.* Except as otherwise herein provided, the Town shall have, exercise and enjoy all rights, immunities, powers, privileges and franchises, and shall be subject to all the duties, liabilities and obligations provided for under the Constitution and general laws of the State of Maine governing municipal corporations.

In this charter, no mention of a particular power shall be construed to be exclusive or to restrict the scope of the powers which the Town would have if the particular power were not mentioned. The charter shall be liberally construed to the end that the town may have all the powers the Town may assume pursuant to state laws and to the provisions of the State Constitution.

#### ARTICLE III. COUNCILMEN— POWERS AND DUTIES

Sec. 1. *Powers and duties, general.* The Councilmen shall have the same powers and duties which are now vested in the Councilmen of towns under the general laws of the State of Maine.

7. 1 M.R.S.A. § 405. *Executive sessions*

Those bodies or agencies falling within this subchapter [the Town Council of Old Orchard Beach does] may hold executive sessions subject to the following conditions.

1. These sessions shall not be used to defeat the purposes of this subchapter as stated in section 401.

2. No ordinances, orders, rules, resolutions, regulations, contracts, appointments or other official actions shall be finally approved at executive sessions.

6. Deliberations may be conducted in executive sessions on the following matters and no others: [the deliberations on the reference resolve would not qualify under the enumerated exceptions] . . . .

1 M.R.S.A. § 409(2) in pertinent part provides as follows:

2. *Actions.* If any body or agency approves any ordinances, orders, rules, resolutions, regulations, contracts, appointments or other official action in an executive session, this action shall be illegal . . . . Upon learning of any such action, any person may appeal to any Superior Court in the State. If a court, after a trial de novo, determines this action was taken illegally in an executive session, it shall enter an order providing for the action to be null and void.

civil action for declaratory judgment and injunctive relief was properly taken, but, as any other civil action, is subject to Rule 56(c) and (d) relating to summary judgment, if no genuine issue of material fact exists for trial. As stated previously, the appellees' motion for summary judgment was properly supported by sufficient affidavit of Councilman Roberts who was in a position to know the facts of his own personal knowledge. The affidavit must show *affirmatively* that the affiant has personal knowledge of the matters asserted. *Wescott v. Allstate Insurance*, Me., 397 A.2d 156, at 164 (1979).[8]

It is true that Mr. Bird, in his counter affidavit, does state in the introductory paragraph thereof that his assertions are based on his personal knowledge, yet, the appended jurat expressly contradicts that fact; indeed, it reads as follows:

> Personally appeared the above-named John R. Bird who, after being duly sworn, made oath that the statements made by him in the foregoing affidavit are true and correct *according to the best of his knowledge* and belief.

Thus, the Bird counter affidavit, showing on its face and in the jurat that it was merely a conclusory judgment of the affiant without any actual basis for personal knowledge was fatally defective for noncompliance with Rule 56(e), M.R.Civ.P. Supporting and opposing affidavits must set forth such facts as would be admissible in evidence and must show affirmatively that the affiant is competent to testify to them. *See Steeves v. Irwin*, Me., 233 A.2d 126, at 130 (1967); *Englebrecht v. Development Corporation for Evergreen Valley*, Me., 361 A.2d 908, 911 (1976). What was required of the plaintiff-appellant in opposition to the Roberts affidavit was an affidavit setting forth specific and detailed facts

denying or contradicting Roberts' statements that the Council's deliberations on the bond issue and its ultimate enactment thereof were not made in secret or executive sessions, or that secret meetings occurred of which Roberts was unaware. *Haskell v. Planning Bd. of Town of Yarmouth*, Me., 388 A.2d 100, 102 (1978). Nothing in the Bird counter affidavit showed affirmatively that he was in a position to have personal knowledge of the holding of any such secret meetings by the Council as asserted, to the occurrence of which he would be competent to testify. *See Richards Realty Company v. Inhabitants of Town of Castle Hill*, Me., 406 A.2d 412 (1979).

The appellant's affidavit was insufficient to counteract the Roberts affidavit, which, in relation to the claim of violation of Maine's Freedom of Access Law by the Old Orchard Beach Town Council, properly showed that there existed no genuine issue as to any material fact and that the defendant-appellees were entitled to a judgment on that issue as a matter of law.

The entry will be:

Appeal denied.

Summary judgment affirmed.

The parties are to bear their own costs on appeal.

McKUSICK, C. J., and GODFREY and ROBERTS, JJ., concurring.

NICHOLS, J., concurring in separate opinion.

NICHOLS, Justice, concurring.

All power is inherent in the people, proclaims the Declaration of Rights of Maine's Constitution.[1] The power of referendum should be regarded as the exercise of a power retained by the people, and not as one granted to them.

---

Appeals shall be privileged in respect to their assignment for trial . . . .

3. *Proceedings not exclusive.* The proceedings authorized by this section shall not be *exclusive of any other civil remedy provided by law.*

8. The record does not suggest, nor does the plaintiff argue on appeal, that meetings took place in the absence of Councilman Roberts.

1. *Me. Const.* Art. I, § 2. *Cf. U.S. Const.*, Amend. X. *See also Baxter v. Waterville Sewerage Dist.*, 146 Me. 211, 215, 79 A.2d 585, 588 (1951).

After the people in referendum have rejected an ordinance, the legislative body cannot nullify the power of referendum by promptly passing again the same ordinance.[2]

While I concur in the judgment reached by the majority this day, I am unwilling to brush aside as mere dictum this important rule.

It is unsatisfactory, I submit, to suggest that the electors have an adequate remedy at the polls by waiting for the members of the local legislative body to come up for reelection.

Rather than conjuring up inclement weather or inadequate publicity to explain away the people's rejection of a costly measure, the courts should be vigilant to guard the right of referendum retained by the people against any legislative action which would abrogate that right.

A legislative body, such as the town council in the case before us, is not prevented from dealing at once with the subject matter of the rejected ordinance so long as it acts in good faith and with no intent to evade the effect of the electors' vote in the recent referendum.[3]

To deal with the same subject matter and to reenact essentially the same ordinance are, however, two different concerns.

The central fact in the case before us, as I see it, was that almost thirteen months elapsed between the date on which the first ordinance was rejected in referendum and the date on which the town council passed a very similar ordinance, the validity of which is challenged on this appeal.

Upon the record before the Superior Court, it was not error to conclude that such action by the town council was not taken with any design of circumventing a referendum.

---

**2.** "Such is unquestionably the law in principle." *Eagle v. Corbin*, 275 Ky. 808, 122 S.W.2d 798, 802 (1938); *Re Megnella*, 133 Minn. 98, 157 N.W. 991, 992 (1916); 5 McQuillin, *Municipal Corporations* § 16.53 at 208 (3d ed. 1969). *See* also 1 Antieau, *Municipal Corporations* § 4.36 at 4–68 (1980).

**3.** *See Trumbull v. Ehrsam*, 148 Conn. 47, 166 A.2d 844, 847 (1961).