Robert J. HANEY, a citizen, resident, and taxpayer of the City of Somerset, Kentucky, etc., Appellant,

v.

CITY OF SOMERSET, a Municipal Corporation of the third class, etc., Appellee.

Court of Appeals of Kentucky.

Nov. 26, 1975.

Frederic G. Neikirk, Somerset, for appellant.

Phillip K. Wicker, Harris & Wicker, Somerset, Jo M. Ferguson, Grafton, Ferguson, Fleischer & Harper, Louisville, for appellee.

CATINNA, Commissioner.

Robert J. Haney, a citizen, resident, and taxpayer of the City of Somerset, appeals from a judgment of the Pulaski Circuit Court approving the issuance and sale of revenue bonds by the City of Somerset, the proceeds of which are to be used for the construction of a gas transmission pipeline.

The City of Somerset owns and operates a municipal natural gas distribution system. The system is not engaged in the primary production of natural gas, its function being confined exclusively to distributing natural gas purchased from other producers. The supply of gas available to the Somerset system from other sources has been drastically curtailed by the present energy crisis. The system determined that it could acquire a substantial amount of natural gas from the West Hyden field in Leslie County. The city proposes to obtain this available natural gas by constructing an eight-inch transmission line from the West Hyden field to the interstate transmission line of Columbia Gas Transmission Company near Manchester in Clay County. Columbia Gas would transport Somerset's gas through its privately owned line to the municipal system, and Somerset would defray the cost of constructing the eight-inch pipeline from monies realized from the sale of revenue bonds to be issued by the city, the estimated cost of the project being $1,800,000.

KRS 96.170, while granting cities of the third class power to furnish utility services including heat, is nothing more than a basic grant of authority. Financing of the acquisition, construction, and extension of a municipal natural gas distribution system, as authorized by KRS 96.170, envisions the issue and sale of revenue bonds authorized by KRS Chapter 58. This procedure requires compliance with the statutory mandate set out in KRS 58.010–58.140.

The participation of Columbia Gas, a private corporation, in the transaction caused federal authorities to classify the proposed bonds as "industrial development bonds" subject to all federal taxation. (See Section 103(c), U.S. Internal Revenue Code of 1954.) Federal regulations concerning the public sale of the proposed revenue bonds require the filing of a detailed financial statement on behalf of Columbia Gas, which requirement is beyond the scope of Somerset's ability to supply. Being unable to sell the revenue bonds at a publicly advertised competitive sale because of these restrictive federal regulations, Somerset proposes to issue and sell these revenue bonds privately, without any prior public advertisement. This private sale would be consummated by negotiations conducted with a number of "sophisticated investors," a designation promulgated by federal statutes to define a particular class of investors.

Robert J. Haney filed this declaratory-judgment proceeding contesting the validity of the Somerset plan. It is claimed that various segments of the program are of questionable legality, including the proposal to sell the revenue bonds at a negotiated private sale rather than a publicly advertised competitive sale.

The trial court, upon its consideration of the private versus public sale question, reasoned:

"The sale of the proposed bond issue to a limited number of sophisticated investors within the meaning of SEC regulations can be accomplished without an Official Statement and without the special audits necessary to a public sale, and in view of the fact that the proposed bonds would take on some of the aspects of industrial building revenue bonds as authorized by Chapter 103 of the Kentucky Revised Statutes, which bonds may be sold by private negotiations, the proposed sale limited to sophisticated investors, which will require adequate reporting to a representative of the City, will be valid;

\* \* \* \* \* \*

"The City has the legal authority to sell municipal bonds possessing certain characteristics of industrial revenue bonds in a manner limiting such sales to sophisticated investors, as defined by federal law, where it is impractical or impossible to sell such bonds at competitive sale under federal law;"

Chapter 103 of the Kentucky Revised Statutes is concerned with "Revenue Bonds for Miscellaneous City or County Projects," while KRS 103.200–103.285 are entitled "Industrial Buildings for Cities and Counties." KRS 103.200 defines an industrial building as follows:

"As used in KRS 103.200 to 103.285, 'industrial buildings' or 'building' means any building, structure, or related improved area suitable for and intended for use as a factory, mill, shop, processing plant, assembly plant, fabricating plant, or parking or pollution control area or structure deemed necessary to the establishment, retention or expansion thereof, and the necessary operating machinery and equipment, or any of these things, to be rented or leased to an industrial concern by the city or county by which it is acquired."

The revenue bonds now being considered by Somerset cannot qualify as industrial building revenue bonds under this definition. Although KRS 103.230 specifically permits the private sale of this particular type revenue bond, such private or negotiated sale is conditioned upon the lessee of the industrial building requesting in writing that the bonds be sold privately. This court is of the opinion that there is no possible theory by which the revenue bonds that Somerset proposes to issue can be transformed into industrial building revenue bonds that can be sold at a private or negotiated sale.

This court is of the opinion that existing Kentucky law is the controlling consideration in determining the validity of bonds issued by the Commonwealth or any of its governmental agencies. For many years the general policy of the Commonwealth has been to require the offering of municipal bonds at a publicly advertised competitive sale. *Eagle v. City of Corbin,* 275 Ky. 808, 122 S.W.2d 798 (1938). However, the public policy, as announced by the court, has upon occasions been made the subject of exceptions by acts of the legislature; for example, the Capital Plaza Authority, the Turnpike Authority, and the County Turnpike Authority, all of which are authorized by specific legislative enactment to sell revenue bonds either at public or private sale. Cf. *Perkins v. City of Frankfort,* Ky., 276 S.W.2d 449 (1953).

Although it is contended that KRS 96.170 does not expressly prohibit the private sale of bonds, it is likewise evident that the section is concerned with authorization only and does not contemplate the exercise of any control over financing the projects enumerated. A city desiring to avail itself of any right granted by KRS 96.170 must, if financing is required, resort to financing the proposed project by issuing the revenue bonds authorized by Chapter 58 of the Kentucky Revised Statutes.

It is contended that KRS 58.010 to 58.140 contain no express provision prohibiting a private sale. KRS 58.040 provides for the method of sale by the following language: "The bonds shall be sold in such manner and upon such terms as the governmental

agency deems best, * * *." In *Eagle v. City of Corbin,* 275 Ky. 808, 122 S.W.2d 798 (1938), the court was called upon to construe statutes "authorizing the city council or commissioners to sell such bonds 'in such manner and upon such terms' as it 'shall deem for the best interests' of the city." This court, in limiting the scope of this language, said:

"* * * The case quite forcefully presents to the court the need for speaking specifically upon the construction to be given the provisions of the statutes above cited. We think they are to be construed as granting broad discretionary powers to the city councils or commissioners in the creation and sale of such bonds, but not to the extent of avoiding public and reasonable advertisement or a proposal to receive bids or offers for bonds proposed to be issued and sold."

This public policy has prevailed for many years, although from time to time in specific situations legislative enactment has mandated the alternate of public or private sales. In 1958 the General Assembly enacted KRS 424.360 which provides as follows:

"No sale of general obligation bonds or revenue bonds of any governmental unit or political subdivision, or agency thereof, shall be made except upon newspaper advertisements for bids, published for the publication area constituted by the political subdivision or government unit and published to afford statewide notice. If the bonds are in principal amount of fifty thousand dollars ($50,000) or more, an advertisement for bids shall also be published in a publication having general circulation among bond-buyers." [1]

This court has concluded that unless there is a legislative exemption of the requirements as set out in *Eagle v. City of Corbin,* supra, and KRS 424.360 the revenue bonds issued by the City of Somerset must be sold at a publicly advertised competitive sale.

We do not reach and now decline to pass upon other issues presented in this proceeding.

The judgment is reversed.

REED, C. J., and CLAYTON, LUKOWSKY, PALMORE, STEPHENSON and STERNBERG, JJ., concur.

JONES, J., dissents.

JONES, Justice (dissenting).

In my view the majority opinion is based on neither the law nor the facts.

The city of Somerset has owned and operated a municipal gas system since 1951. The city has been able to furnish natural gas to its residents, businesses and industries. Now, the city is caught in the "energy crisis." Reduction of natural gas supplies has made it necessary for the city to allocate gas to its customers. Gas supplies to major industries have been drastically reduced. New industries, including an important health-care facility of the Commonwealth, have been refused the service of natural gas. The exigent circumstances which give rise to the need for additional supplies of natural gas place Somerset in the words of a mountain colloquialism, "between the crib loft and a tight place."

The only available supply of natural gas for the city of Somerset is located in Leslie County, some 70 miles from Somerset. The only way this supply can be brought to Somerset is by construction of a pipeline approximately 22 miles in length to another gas line. To finance that construction, Somerset proposes to issue and sell revenue bonds privately and without any prior public advertisement.

Somerset is a city of the 3rd class. "The legislative body of any city of the 3rd class may, by ordinance, provide the city and its inhabitants with water, light, power, heat, and telephone service, by contract or by

---

1. The applicability, vel non, of this section of the statute was not presented in the lower court, has not been argued, and is not decided.

works of its own, located either within or beyond the boundaries of the city; make regulations for the management thereof, and fix and regulate the prices to private consumers and customers." KRS 96.170.

Somerset of necessity adopted a plan to sell bonds to a limited number of investors within the meaning of SEC regulations. The trial court, in detailed and concise findings of fact and conclusions of law, held that the proposed bonds to be sold would take on some of the aspects of industrial building revenue bonds as authorized by Chapter 103 of the Kentucky Revised Statutes.

The majority opinion is bottomed on statutes that are not pertinent to the issues presented in this case. The majority opinion contains this broad statement, "For many years the general policy of the Commonwealth has been to require the offering of municipal bonds at a publicly advertised competitive sale." That policy is predicated upon the stale authority of *Eagle v. City of Corbin,* 275 Ky. 808, 122 S.W.2d 798 (1938). The principles enumerated in *Eagle,* supra, are distinguishable from those presented in the case at bar.

The Legislature has relieved governmental agencies from the requirements that their bonds be sold at a publicly advertised sale. Examples of agencies so exempted are the Capitol Plaza Authority, the Turnpike Authority, and the County Turnpike Authority. These agencies are authorized by the Legislature to sell revenue bonds either at public or private sales. The precedent set by the Legislature is of sufficient authority to justify this court in modifying its previously announced public policy of requiring the sales of municipal bonds to be publicly advertised. The result of the majority opinion this day rendered is a cruel and harsh blow to the hopes and aspirations of Somerset and its citizens. I respectfully dissent from the majority opinion and I would affirm the judgment.